[Civ. No. 41266. First Dist., Div. Two. Jan. 24, 1979.]

COUNTY OF SANTA CLARA, Plaintiff and Respondent, v.
SUPPORT, INCORPORATED, Defendant, Cross-complainant and Appellant;
JOHN SCHALLER, Defendand and Appellant;
SANTA CLARA COUNTY DISTRICT ATTORNEY et al., Cross-defendants and Respondents.

[Civ. No. 42098. First Dist., Div. Two. Jan. 24, 1979.]

SUPPORT, INCORPORATED, Cross-complainant and Appellant, v.
STATE DEPARTMENT OF BENEFIT PAYMENTS,
Cross-defendant and Respondent.

## COUNSEL

John C. Schaller for Defendants, Cross-complainants and Appellants and for Defendant and Appellant.

Ray Lewis Fuller as Amicus Curiae on behalf of Defendants, Cross-complainants and Appellants and Defendant and Appellant.

Selby Brown, Jr., County Counsel, and Susan G. Levenberg, Deputy County Counsel, for Plaintiff and Respondent and for Cross-defendants and Respondents.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Timothy A. Reardon and Gloria F. DeHart, Deputy Attorneys General, for Cross-defendant and Respondent.

## OPINION

**WILCOX, J.\***—Appellants Support, Incorporated, and John Schaller appeal from (1) a preliminary injunction precluding appellants from taking assignments for collection of and collecting past due child and/or spousal support from persons who have received public assistance in Santa Clara County unless the county first collects amounts due to it; (2) Santa Clara County's demurrer to a cross-complaint sustained without leave to amend and the granting of a motion to strike the cross-complaint; and (3) the State of California's demurrer to the cross-complaint sustained without leave to amend.

---

\*Assigned by the Chairperson of the Judicial Council.

Support, Inc. is a California corporation doing business as a collection agency. John Schaller is its president. The corporation was in the business of collecting both current support and accrued arrearages, on a contingent fee basis[1] for custodial parents, including former and current aid to families with dependent children (hereinafter AFDC) recipients.

On October 22, 1976, the District Attorney of Santa Clara County filed a complaint for declaratory judgment and injunctive relief on behalf of Santa Clara County against appellants. The complaint alleged that the action of Support, Inc. in accepting assignments and pursuing collections interfered with the county's right to assigned arrearages under both express and equitable assignments and its duty to enforce support obligations and to collect support arrearages. This action was alleged to result in irreparable injury arising out of the loss of incentive funds, additional loss of state and federal funds for the welfare program and a multiplicity of lawsuits in order for the county to protect its rights in each case where Support, Inc. was pursuing collections.

In the second cause of action, the county contended that child support rights are not assignable except with judicial approval or in accordance with statute. A controversy was alleged to exist in that the county asserted that it is the only party that can collect support arrears of former or current welfare recipients who have assigned their support rights by equitable assignment and/or by operation of law to the county and that, therefore, the assignments to Support, Inc. are void and against public policy.

Finally, the county contended that its interest in the support arrears of former welfare recipients had priority and must be satisfied in full, notwithstanding the priority in terms of time, before the former welfare recipient receives any arrears.

A temporary restraining order was granted on October 22, 1976. Demurrers were filed on behalf of appellants, asserting that neither the first nor the second cause of action stated facts sufficient to constitute a cause of action. On November 5 and 10, 1976, the hearing on the preliminary injunction was held. Various affidavits and declarations were submitted and testimony was taken both on behalf of and against the preliminary injunction.

---

[1] The fee was 50 percent of arrearages collected and 5 percent of current support.

On December 15, 1976, appellants moved to dismiss the complaint on the grounds that the district attorney was an improper attorney to bring an action on behalf of Santa Clara County and that the county board of supervisors had not authorized the action.[2]

On February 16, 1977, the court issued a preliminary injunction[3] prohibiting appellants from the following acts:

"A. From the taking of assignments for the purpose of collecting past-due child and/or spousal support from any person who has at any time in the past received Public Assistance in Santa Clara County, without first securing:

"(1) An affidavit from the Santa Clara County District Attorney, Family Support Division, that there are no monies owing Santa Clara County on account of such assistance or;

"(2) A release from the Santa Clara County Family Support Division in full and complete satisfaction of all unreimbursed expense on account of such assistance.

"B. From proceeding to collect, either by way of any assignment taken prior to the date of this order, or without benefit of any assignment, past-due child and/or spousal support from any person who has at any time in the past received Public Assistance in Santa Clara County without first securing:

"(1) An affidavit from the Santa Clara County District Attorney, Family Support Division, that there are no monies owing Santa Clara County on account of such assistance or;

"(2) A release from the Santa Clara County Family Support Division in full and complete satisfaction of all unreimbursed expense on account of such assistance.

"C. From obtaining an order vacating any order providing for the payments of support to the Santa Clara County Adult Probation

---

[2]No further reference to this motion to dismiss appears in the clerk's transcript, but apparently it was denied.

[3]The injunction continued the terms of the temporary restraining order issued on October 22, 1976, and ordered to remain in effect pending decision on the injunction.

Department or the Family Support Trustee without first filing and serving on the Santa Clara County District Attorney's Office a notice of motion requesting the vacating of said order.

"D. From disbursing any funds previously collected or received during the pendency of this action as and for past-due child and/or spousal support on behalf of any person who has at any time in the past received Public Assistance in Santa Clara County. Said funds shall be held in trust pending further determination by this Court of the appropriate disposition thereof.

"E. From proceeding with collection on behalf of any person who has represented that they have never received Public Assistance in Santa Clara County, which collections initiated or commenced from and after the filing of the Complaint herein, without first obtaining written verification from the Santa Clara County District Attorney's Office that said person has, in fact, never received Public Assistance in Santa Clara County. The Santa Clara County District Attorney is ordered to respond to any such inquiry by SUPPORT, INCORPORATED within seven (7) days of its receipt of such inquiry."[4]

On February 22, 1977, the complaint of the County of Santa Clara was answered by appellant and a cross-complaint for declaratory and injunctive relief was filed by Support, Inc. against the County of Santa Clara District Attorney, County of Santa Clara Probation Department, County of Santa Clara Department of Social Services, State of California Department of Benefit Payments, and Joseph Califano, U.S. Secretary of H.E.W.[5]

The three county departments moved to strike the cross-complaint, alleging that the request for declaratory relief was redundant on the basis that the cross-complaint did not state sufficient facts to constitute a cause of action, that the same cause of action was pending in another action, and that the cross-complaint was uncertain and ambiguous.

On April 4, 1977, the court granted the motion to strike the cross-complaint on the grounds that the cross-complaint did not state sufficient facts to constitute a cause of action.

---

[4]The injunction was subsequently modified by stipulation to provide for payments of the current month's support from any money collected within that month.

[5]The cross-complaint against Joseph Califano was dismissed by appellants because the United States did not consent to being sued in state court.

The court sustained the state's demurrer without leave to amend on the basis that the "alleged issues raised by said cross-complaint are fully covered in the main action and an independent cause of action is raised as to the Department's breach of administerial duties as no 'substantial failure to perform' said duties by any 'lesser' agency has been or seems possible of being pled."

## SUMMARY OF STATUTORY BACKGROUND

To fully understand appellants' contentions, it is necessary to examine family support law as it existed both before and after September 20, 1975, the date on which California passed emergency legislation conforming state law to federal requirements of title IV of the Social Security Act amendments. All states were required as a condition of eligibility for federal reimbursement for assistance granted to welfare dependents to conform their state law to federal regulations.

Prior to September 20, 1975, a California county providing public assistance and welfare aid to dependent parents and children was subrogated to the rights of the obligee pursuant to section 248 of the California Civil Code,[6] thus creating an equitable assignment in the county. As stated in *Marriage of Shore,* 71 Cal.App.3d 290, 297 [139 Cal.Rptr. 349]: "As repeatedly underlined, equitable assignment or right of subrogation is a creature of equity and applies to all cases where one party involuntarily pays a debt for which another is primarily liable and which in equity and good conscience should have been paid by the latter (*Estate of Kemmerrer* (1952) 114 Cal.App.2d 810, 814 [251 P.2d 345, 35 A.L.R.2d 1393]; *Fireman's etc. Co.* v. *State Comp. etc. Fund* (1949) 93 Cal.App.2d 408, 412-413 [209 P.2d 55]; 7 Witkin, Summary of Cal. Law (8th ed. 1974) Equity, § 124 et seq., p. 5342)." (See also 3 Witkin, Cal. Procedure (2d ed. 1971) § 101, pp. 1776-1777.)

The amount of reimbursement that the county could recover to offset unreimbursed expenses paid out for the support of the custodial parent

---

[6]Section 248 stated: "The obligee may enforce his right of support against the obligor and the county may proceed on behalf of the obligee to enforce his right of support against the obligor. Whenever the county furnishes support to an obligee, it has the same right as the obligee to whom the support was furnished, for the purpose of securing reimbursement and of obtaining continuing support. The right of the county to reimbursement shall be subject to any limitation otherwise imposed by the law of this State. . . ."

and dependent children is set out in section 11350 of the Welfare and Institutions Code.[7]

In 1975, federal legislation established a comprehensive mandatory program to enforce child support to be carried out by the states. Public Law No. 93-647 added title IV-D, codified as 42 United States Code sections 651-659. At the same time, conforming amendments were made to title IV-A of the Social Security Act (the AFDC program), most importantly to section 602 of title 42 of the United States Code.

Title IV-D requires, inter alia, that each applicant for public assistance must assign to the state any rights to support which have accrued at the time the assignment is executed. (42 U.S.C. § 602(a)26(A).) Section 657 of title 42 of the United States Code contains instructions for distributing the amounts collected, providing generally that for families receiving assistance the monthly support payments shall be retained by the state as reimbursement unless the monthly required payment exceeds the grant in which case the recipient receives the funds. Amounts in excess of the monthly support payment (arrearages) are retained as reimbursement for past assistance, if any exists. When a family ceases to receive assistance, the law provides that the state may continue to collect for three months, and continue to collect at the end of that time if authorized by the custodial parent.

The title IV-D legislation also provides for sanctions for noncompliance by the states. The amount payable to the state for its AFDC program shall be reduced by 5 percent if the state is found to have failed to have an effective program (42 U.S.C. § 603(h)).

In response to the federal legislation, California enacted section 11475 et seq. of the Welfare and Institutions Code. For the purposes of this

---

[7]Section 11350 stated: "In any case of separation or desertion of a parent or parents from their spouse and child or children which results in aid being granted under this chapter to such spouse and child or children, such parent or parents shall be obligated to the county for an amount equal to: (a) the value of the aid received by such family during such period of separation or desertion with respect to such spouse and child or children, reduced by (b) any amount actually paid by such parent or parents for the support and maintenance of such spouse and child or children during such period, if and to the extent that such amount reduces the aid received; except that in any case where an order for the support and maintenance of such spouse and child or children has been issued by a court of competent jurisdiction, the obligation under this section shall not exceed the amount specified in such order less any amount actually paid by such parent or parents during such period. In the absence of such an order, the district attorney shall bring suit for enforcement of support pursuant to this section. Any payments required pursuant to this section shall be reasonably based on ability to pay."

action, section 11475 of the Welfare and Institutions Code[8] designated the Department of Benefit Payments as the single organizational unit with the duty to administer the state plan. However, "State plan functions shall be performed by other agencies as required by law, by delegation of the department, or by cooperative agreements."

Section 11475.1 of the Welfare and Institutions Code provides in pertinent part: "Each county shall maintain a single organizational unit located in the office of the district attorney which shall have responsibility for promptly and effectively enforcing the obligation of parents to support their children . . . . The district attorney shall take appropriate action, both civil and criminal, to enforce this obligation when the child is receiving public assistance and when requested to do so by the individual on whose behalf the enforcement efforts will be made when the child is not receiving public assistance."

In order to comply with the federal law and to protect the local, state and federal share of aid granted to recipients, section 11477 of the Welfare and Institutions Code states that as a condition of eligibility for aid, each applicant shall: "(a) Assign to the county any rights to support from any other person such applicant may have in their own behalf or in behalf of any other family member for whom the applicant is applying for or receiving aid, and which have accrued at the time such assignment is made. Receipt of public assistance under this chapter shall operate as an assignment by operation of law."

Collection and disbursement of funds assigned pursuant to section 11477 is set forth in section 11457 of the Welfare and Institutions Code.[9] Basically, this section requires direct payment of child support money to

[8]The text of this section was operative until July 1, 1978, at which time the Department of Benefit Payments became the State Department of Social Services.

[9]Section 11457 stated: "Money from noncustodial parents for the support of a needy child with respect to whom an assignment under Section 11477 has been made shall be paid directly to the district attorney or his designee and shall not be paid directly to the family. Such absent parent support payments, when collected by or paid through any public officer or agency, shall be transmitted to the county department providing aid under this chapter.

"The Department of Benefit Payments, by regulation, shall establish procedures not in conflict with federal law, for the distribution of such noncustodial parent support payments.

"If an amount collected as child support represents payment on the required support obligation for future months, the amount shall be applied to such future months. However, no such amounts shall be applied to future months unless amounts have been collected which fully satisfy the support obligation assigned under subdivision (a) of Section 11477 for the current months and all past months."

the district attorney by the noncustodial parent and prohibits crediting advance payments to child support unless amounts have been collected which fully satisfy the assigned support obligation for current months and all past months.

The leading case in interpreting the 1975 emergency legislation is *In re Marriage of Shore, supra,* 71 Cal.App.3d 290, which was decided by this court. In that case, Mary Shore had received over a five-year period $10,075.61 AFDC aid, of which $6,239.91 remained unreimbursed to the county. After going off AFDC, Mary assigned her right to the past child and spousal support to appellant, a private collection agency.[10] The principal issue on appeal was whether an AFDC recipient was authorized to assign to appellant her rights as to the past support payments which had accrued at the time she was receiving AFDC or whether she was limited to assign for collection only rights as to the future payments which fell due when she was no longer an AFDC recipient. We held that (1) under the law existing prior to September 20, 1975, the county paying aid for support of needy children was entitled to reimbursement from the custodial parent, and in order to secure such right the county obtained an equitable assignment or subrogation right; (2) after September 20, 1975, a custodial parent applying for and receiving aid assigns by operation of law all support rights that have accrued before and during the grant of the aid; and (3) the right of a county to collect past due payments from a custodial parent does not terminate when a custodial parent ceases to receive aid under the AFDC program.

Appellants argue that the court should reconsider its holding that prior to 1975 there was an equitable subrogation of an AFDC recipient's accrued arrearages. They cite three cases which purportedly reach a contrary result.

We agree with respondent's analysis of these cases. In *County of San Bernardino* v. *Simmons* (1956) 46 Cal.2d 394 [296 P.2d 329], the court interpreted the statutory scheme relating to responsible relatives. Since the statutes provided specific procedures for recoupment, the county could not seek recoupment under the general provisions of law establishing a duty of support. In the instant action, the statutes provide for reimbursement. In *Ogdon* v. *Workmen's Comp. Appeals Board* (1974) 11 Cal.3d 192 [113 Cal.Rptr. 206, 520 P.2d 1022], the court considered the

---

[10]The same appellant as in the instant case.

claim of the county for reimbursement from a workmen's compensation award made to a disabled employee. Benefits had been paid to the employee for support of himself and his family. The court held that under California statutes no liability rests on the recipient of public assistance to reimburse the county for aid properly received. The court pointed out that specific statutory authority did exist for reimbursement from the absent parent for aid granted to a spouse or children, pursuant to section 11350 of the Welfare and Institutions Code. (*Id.,* at p. 201.) *County of Santa Barbara* v. *Flanders* (1976) 63 Cal.App.3d 486 [133 Cal.Rptr. 798] does not discuss equitable assignments, but does recognize that the county may proceed against the absent parent on either its own behalf or that of the parent. Thus, the cases are consistent with the decision in *Shore.*

## CHILD SUPPORT PRIOR TO SEPTEMBER 20, 1975

■ Appellants contend that it was improper to enjoin Support, Inc. from taking assignments from and making collections for those custodial parents who received no welfare subsequent to September 20, 1975, on the grounds that the injunction erroneously covers funds which were not subrogated. They cite a hypothetical case where accrued arrearages exceed the amount of assistance paid.

We agree with appellants that with respect to the pre-1975 cases, the county is subrogated only to the actual amount of aid paid. However, as we stated in *Shore,* "once a valid assignment is made, the assignor cannot cancel or modify the completed assignment by unilateral action without the assent of the assignee, nor may he defeat or impair the rights of the assignee in any other way [citations]." (*In re Marriage of Shore, supra,* 71 Cal.App.3d at p. 296.) Consequently, it is appropriate for the subject injunction to preclude appellants' acceptance of assignments without first securing an affidavit from the district attorney's office that there are no monies owing to the county or a release from the county's family support division in full and complete satisfaction of unreimbursed expense on account of past assistance. Once the county's claim is satisfied, the custodial parent is free to make any assignments deemed desirable.

Appellants argue that its clients come from all over the United States and there is no way for the County of Santa Clara to know which persons received assistance since there is no central registry of welfare recipients. This objection has no merit. The instant injunction merely requires an

affidavit that there are no monies owing Santa Clara County. This information is certainly available to the district attorney from the Santa Clara Family Support Division.

## CHILD SUPPORT SUBSEQUENT TO SEPTEMBER 20, 1975

Appellants next address the problem of post-1975 cases. ▮ They contend that the court erred in enjoining Support, Inc. from collecting past due installments in the situation where the custodial parent received AFDC subsequent to September 20, 1975, but is currently off AFDC and additional installments are past due since going off AFDC.

Appellants are correct that, after welfare assistance has terminated, the state may only continue to collect support payments from the absent parent for three months without special authorization from the custodial parent (Welf. & Inst. Code, § 11476; 42 U.S.C. § 657(c)).[11] However, "When a family ceases receiving assistance . . . the assignment of support rights . . . terminates, except with respect to the amount of any unpaid support obligation that has accrued under such assignment." (45 C.F.R. § 302.51(f).)[12]

---

[11]Section 11476 provides in part that "Whenever a family which has been receiving aid to families with dependent children ceases to receive assistance, the district attorney shall:

"(1) Continue to enforce support payments from the noncustodial parent for a period not to exceed three months from the month following the month in which such family ceased to receive assistance and pay all amounts so collected to the family; and

"(2) At the end of such three-month period, if after written notice to the individual, the district attorney is requested to do so by the individual on whose behalf the enforcement efforts will be made, continue to enforce such support payments from the noncustodial parent."

Subdivision (c) of section 657 states: "Whenever a family for whom child support payments have been collected and distributed under the plan ceases to receive assistance under part A of this subchapter, the State may—

"(1) continue to collect amounts of child support payments which represent monthly support payments from the absent parent for a period of not to exceed three months from the month following the month in which such family ceased to receive assistance under part A of this subchapter, and pay all amounts so collected, which represent monthly support payments, to the family; and

"(2) at the end of such three-month period, if the State is authorized to do so by the individual on whose behalf the collection will be made, continue to collect amounts of child support payments which represent monthly support payments from the absent parent and pay the net amount of any amount so collected, which represents monthly support payments, to the family after deducting any costs incurred in making the collection from the amount of any recovery made, and so much of any amounts of child support so collected as are in excess of the payments required to be made in paragraph (1) shall be distributed in the manner provided by subsection (b)(3) (A) and (B) of this section with respect to excess amounts described in subsection (b) of this section."

[12]45 Code of Federal Regulations section 302.51(f) states that "When a family ceases receiving assistance under the State's title IV-A plan, the assignment of support rights

As noted above, *Shore* prohibits the former AFDC recipient from impairing the rights of the assignee in any way. If, as appellants argue, the custodial parent is permitted to collect first on the assets of the noncustodial parent, the remaining assets could be insufficient to satisfy the county's claim and the county's rights substantially impaired.

The issue where subsequent to September 20, 1975, there was receipt of AFDC but there is no aid currently being given and past due support is greater than the AFDC given was raised and answered in *Shore.* We held that such arrearages were assigned in full to the county and that the assignment remained in effect after the family went off aid, until the county is reimbursed.

Similarly, the issue of whether past due installments due from months when the child was not receiving welfare benefits are assigned to the county was determined in *Shore.* ■■■ The county has the exclusive right to collect in welfare cases (see also *In re Marriage of Simmons* (1977) 72 Cal.App.3d 205 [139 Cal.Rptr. 832]).

## SPOUSAL SUPPORT

Appellants argue that the court erred in precluding collection of spousal support arrearages by Support, Inc., since Department of Benefit Payments regulations do not require the collection of spousal support. Thus, where the county does not collect spousal support, the custodial parent is left with no recourse.

■■■ While it is true that state law does not mandate the county's collection of spousal support, it is also true that both before and after September 20, 1975, support rights were subrogated or assigned to the

under § 232.11 of this title terminates, except with respect to the amount of any unpaid support obligation that has accrued under such assignment. From this accrued amount, the IV-D agency shall attempt to collect such unpaid obligation. Under this requirement:
"(1) Such collections shall be used to reimburse any amounts of past assistance which have not been reimbursed under paragraph (b)(4) of this section;
"(2) Of the amount collected, the IV-D agency shall determine the Federal Government's share of the collection so the IV-A agency may reimburse the Federal Government to the extent of its participation in the financing of the assistance payments. From the Federal Government's share the IV-D agency shall deduct and pay the incentive payment, if any, prescribed in § 302.52:
"(3) *Only amounts* collected pursuant to this paragraph *which exceed the amount of unreimbursed past assistance shall be paid to the family*;
"(4) For those cases in which collections are authorized under paragraph (e) of this section, priority shall be given to collection of current support." (Italics added.)

county. (See Civ. Code, § 248; 42 U.S.C. § 602(a)(26)(A); *In re Marriage of Shore, supra,* 71 Cal.App.3d 290.) At its own option, the county may collect spousal support as well as child support. Should the county elect not to collect spousal support, a release can be given as soon as reimbursement from child support is obtained.

We next consider whether the district attorney could properly bring an action for injunction. As we stated in *Shore,* "the enforcement of the support rights owed to the needy children or the parent receiving AFDC aid is, as a matter of statute, entrusted to the district attorney who proceeds on behalf of the county." (*Id.,* at p. 301.)

Finally, appellants contend that the trial court abused its discretion in granting a preliminary injunction. They assert that this is a doubtful case, that there is no showing that other remedies are inadequate or that irreparable harm would result; that the injunction is injurious to third parties; that there is no multiplicity of suits; and that the injunction forbids activity which *Shore* permits—namely, the collection of arrearages accruing after the family ceases receiving aid.

The granting or denial of a preliminary injunction is in the discretion of the trial court, such discretion being abused only where it exceeds the bounds of reason or contravenes the uncontradicted evidence. (*Continental Baking Co.* v. *Katz* (1968) 68 Cal.2d 512, 527 [67 Cal.Rptr. 761, 439 P.2d 889].) A review of the record in this case provides a substantial basis for the court's findings and supports the issuance of an injunction.

First, and most importantly, this is not a doubtful case. An explicit statutory scheme clearly establishes the rights and duties of the county in the collection process. Second, the trial court found, that, on balancing the equities, "the potential irreparable injury to plaintiff herein is of greater magnitude and of more grave consequence warranting interim relief than any injury likely to result to defendant by the granting of such relief." In reaching its conclusion of irreparable injury, the court pointed out that under the comprehensive federal scheme each state must conform to the federal statute and regulations and that failure to conform could place receipt of federal funds in jeopardy. Permitting defendants to collect on a contingent fee basis would effectively preclude reimbursement of the federal share. Obviously, this would result in great and nearly incalculable injury from immediate loss of federal incentive funds and

possible future sanctions for which compensation in damages would be entirely inadequate. Third, the assertion that third parties would be better represented by Support, Inc. than by the District Attorney of Santa Clara may very well be true in certain instances. However, section 11475.2[13] of the Welfare and Institutions Code specifies the legal steps available if the public agency fails to comply with the state plan securing child support. Fourth, it is clear that, absent an injunction, the county will be involved in a multiplicity of individual actions litigating the same issue, as it was required to do in the *Shore* case. Finally, as we discussed above, *Shore* did not hold that subsequent to receiving benefits an AFDC recipient may impair the subrogated rights of the county. Consequently, we find no abuse of discretion in issuing the subject injunction.

However, the trial court should consider at its hearing on the permanent injunction whether or not the present language in the preliminary injunction is the most effective way of protecting the rights of all parties. We are concerned about the situation where the proposed assignor (1) is currently not receiving public assistance aid from the County of Santa Clara (2) has received public assistance aid from the county in the past for which the county has not been reimbursed, and (3) desires to assign only support rights that have accrued since the assignor stopped receiving public assistance aid. In such a situation it would seem appropriate that the appellant may take an assignment of such support rights or attempt to collect same with or without an assignment provided that he first execute an agreement with the county that out of any funds

---

[13]Section 11475.2 states: "If at any time the Director of Social Services considers any public agency, which is required by law, by delegation of the department, or by cooperative agreement, to perform functions relating to the state plan for securing child support and determining paternity, to be failing in a substantial manner to comply with any provision of the state plan, the director shall put such agency on written notice to that effect.

"If the director determines that there is a failure on the part of such public agency to comply with the provisions of the state plan, or if the State Personnel Board certifies to the director that such public agency is not in conformity with applicable merit system standards under Part 2.5 (commencing with Section 19800) of Division 5 of Title 2 of the Government Code, and that sanctions are necessary to secure compliance, the director may invoke either or both of the following sanctions:

"(a) Withhold part or all of state and federal funds, including incentive funds, from such public agency until the public agency shall make a showing to the director of full compliance; or

"(b) Notify the Attorney General that there has been a failure to comply with the state plan and the Attorney General shall take appropriate action to secure compliance.

"Nothing in this section shall be construed as relieving the board of supervisors of the responsibility to provide funds necessary for the continued operation of the state plan as required by law."

he may collect the county shall first be reimbursed for any amounts owing to it prior to distribution of such funds. Or, in the alternative, the appellant shall execute an agreement that the county shall have a lien on the funds collected to the extent that there are funds owing to it for assistance rendered in the past for which it has not been reimbursed.

In light of the foregoing conclusion, it is not necessary to determine whether the ruling of the trial court should also be sustained on the additional ground that the assignment of child and spousal support payments for collection on a contingency fee basis is void as against public policy.

## SANTA CLARA COUNTY'S DEMURRER TO THE CROSS-COMPLAINT

■ We find that the trial court's order striking the cross-complaint and sustaining the demurrer of the county cross-defendant are not properly before this court, since they are nonappealable orders.

The right to appeal is wholly statutory and governed by sections 904 and 904.1 of the Code of Civil Procedure. An order sustaining a demurrer does not come within these statutes. (*Parenti* v. *Lifeline Blood Bank* (1975) 49 Cal.App.3d 331, 334 [122 Cal.Rptr. 709]; *People* v. *Clausen* (1967) 248 Cal.App.2d 770, 776 [57 Cal.Rptr. 227].)

■ California follows the "one judgment rule." Under that rule, a cross-complaint is not sufficiently independent to allow a separate judgment to be entered upon it unless the judgment on the cross-complaint may be considered a final judgment as to a specific party. (*Lemaire* v. *All City Employees Assn.* (1973) 35 Cal.App.3d 106 [110 Cal.Rptr. 507].)

Plaintiff in the underlying complaint is the County of Santa Clara. In the cross-complaint the three specific county agencies named as cross-defendants submitted the demurrer and motion to strike to the court. These three agencies all come within the party plaintiff "County of Santa Clara" in the underlying action and any decision of the court would be binding on the specific agencies and departments of the county. Since there are no different, independent parties subject to the order entered on April 4, 1977, the order is not a final judgment and is not appealable.

CALIFORNIA STATE DEPARTMENT OF BENEFIT PAYMENTS DEMURRER

The cross-complaint filed by Support, Inc. also included the State Department of Benefit Payments. Appellants contend that the court erred in granting the demurrer with respect to the right of a former welfare recipient to a fair hearing before the Department of Benefit Payments. They assert that the "finding" of an insubstantial violation on a demurrer is hardly proper, since the right of a person to have a fair hearing relative to amounts subrogated or assigned affects the rights of all former welfare recipients.

■ Respondent argues that under section 10950 of the Welfare and Institutions Code[14] the right to a fair hearing is limited to action by the county welfare department. Under the IV-D plan in California, the district attorney has the responsibility of collecting child support arrearages. Accordingly, the district attorney must obtain an accounting from the welfare department in order to determine the amount of reimbursement due to the county. However, merely providing an accounting of actual welfare expenditures to the district attorney cannot reasonably be said to be an "action of the county welfare department relating to his application for or receipt of aid," which establishes a right to the fair hearing described in section 10950. In addition, it is clear that section 10950 is applicable only to applicants or recipients of aid—not former recipients.

The general issues of notice of the amount of reimbursement claimed and what procedures would be appropriate between the district attorney

---

[14]Section 10950 of the Welfare and Institutions Code at the time of this action stated: "If any applicant for or recipient of public social services is dissatisfied with any action of the county department relating to his application for or receipt of aid, or if his application is not acted upon with reasonable promptness, or if any person who desires to apply for such aid is refused the opportunity to submit a signed application therefor, and is dissatisfied with such refusal, he shall, in person or through an authorized representative, without the necessity of filing a claim with the board of supervisors, upon filing a request with the department, be accorded an opportunity for a fair hearing.

"For the purposes of administering services, the Director of Health shall have those powers and duties conferred on the Director of Benefit Payments by this chapter to conduct fair hearings in order to secure approval of a state plan under the provisions of applicable federal law.

"The Director of Health may contract with the Department of Benefit Payments for the provisions of fair hearings in accordance with this chapter.

"As used in this chapter 'recipient' means an applicant for or recipient of aid or services except aid exclusively financed by county funds or aid under Chapter 3 (commencing with Section 12000) of Part 3 of this division."

and Support, Inc. to resolve disputes as to the amount of reimbursement are before the court in the underlying action.

Consequently, we find that the demurrer was properly granted.

Accordingly, all of the orders made by the trial court are affirmed.

Taylor, P. J., and Kane, J., concurred.

A petition for a rehearing was denied February 22, 1979, and appellants' petition for a hearing by the Supreme Court was denied March 29, 1979.