[No. A024836. Sixth Dist. Oct. 9, 1985.*]

COUNTY OF SANTA CLARA, Plaintiff and Respondent, v.
DAVID FARNESE, Defendant and Appellant.

**COUNSEL**

Benedict J. Koller, Harry A. Robertson and Robin Yeamans for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Eugene Kaster and Gloria F. DeHart, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**BRAUER, J.**—David Farnese appeals from a judgment directing him to pay to respondent County of Santa Clara (County) the sum of $3,000 as reimbursement for welfare funds expended for the support of his minor daughter. Appellant here contends (1) that the trial court acted in excess of its jurisdiction, and (2) that a previous court order was "res judicata" as to his child support obligation. As authority for those propositions he cites *County of Los Angeles* v. *Ferguson* (1979) 94 Cal.App.3d 549, 555-560 [156 Cal.Rptr. 565]. The Attorney General insists that *Ferguson* misstated the law. We disagree both with appellant and with portions of the *Ferguson* decision, and we therefore affirm the judgment.

## I.

Appellant's marriage to Donna L. Farnese (the mother) was terminated by a final judgment of dissolution filed in the superior court of Santa Clara County on July 28, 1977. There were three children of the marriage—Summer, Chanell, and David, Jr.—and initially custody of all three was awarded to the mother. The final judgment ordered appellant to pay child support in an amount of $100 per month per child (subtotal of $300 per month), plus spousal support to the mother in an amount of $150 per month (grand total of $450 per month).

About two years later, on May 23, 1979, appellant and the mother executed a written stipulation, whereby the mother (1) waived all further spousal support, (2) waived all existing arrearages in child support, and (3) agreed that thenceforward appellant would only have to pay $250 per month for the support of all three children. An order of the superior court, based upon the signed stipulation, was filed the same day. Apparently at some point thereafter (though still in May of 1979), the mother applied to respondent County for assistance under the aid to families with dependent children program (AFDC).[1] Appellant continued to pay child support payments of $250 per month through November of 1979.

Then in December of 1979 appellant and the mother executed a second written stipulation, whereby (1) appellant was given custody of two of the children (Summer and David, Jr.), (2) the third child (Chanell) remained in the mother's custody, and (3) the parties agreed that "Commencing December 1, 1979, neither party shall be obligated to pay to the other party any sum or sums for the support or maintenance of the minor children of the parties." Another order of the superior court, based upon this second stipulation, was filed on December 5, 1979. The County had no advance notice of the order, and was not a party to the proceeding.[2]

In January of 1980 the County ceased paying AFDC benefits for Summer and David, Jr., but continued making payments for the benefit of Chanell.

[1] The evidence on this point was not clear. A social worker testified that Mrs. Farnese's application for AFDC benefits was dated either May 2 or May 9 of 1979—either date well in advance of the family law court's order of May 23, 1979. On the other hand, Mrs. Farnese herself testified that she did not apply for AFDC assistance until after her own spousal support had been terminated by stipulation. The trial court, in its "Announcement of Decision," seems to have adopted Mrs. Farnese's view of the case. In view of the unsettled state of the record, we assume that Mrs. Farnese applied for AFDC benefits *after* she relinquished her right to any further spousal support.

[2] However, the County was informed by Mrs. Farnese after the fact. The record discloses that on January 9, 1980, Mrs. Farnese provided her social worker with a note reading as follows: "Two of my children, Summer and Daniel [*sic:* David, Jr.], are now living with their father. I will not receive any more child support for my daughter Chanell."

Those benefits continued until June of 1982, when the mother found employment and eschewed further public assistance.

On May 18, 1981, while the mother was still receiving AFDC payments, the County commenced an action in the superior court seeking reimbursement from appellant for funds expended for the support of Chanell.[3] The cause was heard on July 5, 1983, by which time all AFDC payments had ceased. On September 2, 1983, the trial court filed a judgment directing appellant to pay to respondent County the sum of $3,000, at the rate of $100 per month, through the Santa Clara County Family Support Trustee. From that judgment this appeal is taken.

## II.

It is appellant's position here (as it was below) that the trial court had no jurisdiction of the subject matter of the action; and in support of his position he cites *County of Los Angeles* v. *Ferguson, supra,* 94 Cal.App.3d 549. Appellant misreads *Ferguson*; the opinion speaks not of jurisdiction, but rather of a county's lack of standing to sue.

In *Ferguson* the County of Los Angeles brought a civil action against a father, pursuant to Welfare and Institutions Code section 11350.1, to collect *ongoing* child support. The County's pleading was not deft; among other things, it neglected to mention that the minor in question was receiving public assistance from Los Angeles County. In his answer to the complaint, the father set up as a defense the existence of a Family Law Act order concerning child support issued by the Orange County Superior Court. He then moved for judgment on the pleadings. The trial court granted the motion, but gave leave to amend. Los Angeles County declined to amend, and sought relief in the Second District of the Court of Appeal. That court upheld the trial court, on the ground that the County's pleading was plainly defective. But then it went further, and said this: Whenever there exists a family law superior court order concerning child support, a county which furnishes AFDC funds for a resident minor *lacks standing* to initiate an independent action against a noncustodial parent to collect either ongoing support or arrearages. Instead, according to *Ferguson,* the County which provides welfare assistance must apply to the family law court for relief—

---

[3]Initially, the District Attorney of Santa Clara County proceeded under sections 11350, 11350.1, and 11484 of the Welfare and Institutions Code, and sought not only reimbursement but ongoing child support as well. But by the time the case came on for hearing, all AFDC payments had ceased (see text); and so the lawsuit, such as it was, boiled down to a claim for reimbursement for AFDC funds already expended for the support of the daughter Chanell.

even if that family law court happens to sit in another county. (*County of Los Angeles* v. *Ferguson, supra,* 94 Cal.App.3d at pp. 558-561.)[4]

In arriving at its conclusion, the *Ferguson* court sought to interpret and to reconcile four different statutes in the Welfare and Institutions Code: sections 11350, 11350.1, 11475.1, and 11484. With great deference to our brethren in the Second District, we have examined those same statutes and have arrived at a different conclusion.

### III.

The statutory history of the AFDC program has been ably set forth in two appellate decisions, *County of Santa Clara* v. *Support, Inc.* (1979) 89 Cal.App.3d 687, 694-700 [152 Cal.Rptr. 754], and *In re Marriage of Shore* (1977) 71 Cal.App.3d 290, 295-300 [139 Cal.Rptr. 349]. From those decisions we extract the following salient points:

"[¶] In 1975, federal legislation established a comprehensive mandatory program to enforce child support to be carried out by the states." (*County of Santa Clara* v. *Support, Inc., supra,* 89 Cal.App.3d at p. 695.) That legislation requires "that each applicant for public assistance must assign to the state any rights to support which have accrued at the time the assignment is executed." (*Ibid.*) The legislation "also provides for sanctions for noncompliance by the states. The amount payable to the state for its AFDC program shall be reduced by 5 percent if the state is found to have failed to have an effective program (42 U.S.C. § 603(h))." (*Ibid.*)

Section 656(a), of title 42 of the United States Code provides: "The support rights assigned to the State under section 602(a)(26) of this title shall constitute an obligation owed to such State by the individual responsible for providing such support. Such obligation shall be deemed for collection purposes to be *collectible under all applicable State and local processes.*" (Italics added.)

"[B]oth the state and federal governments are entitled to reimbursement from the funds collected by the county in proportion to their contribution to the welfare aid (§ 11487) [fn. omitted]. It follows that an eventual denial to the county of the right to collect the past arrearages from the noncustodial parent might result in a loss of revenue not only to the county, but to the

---

[4]We do not mean to suggest that the *Ferguson* decision was wrong on its facts. As carefully pointed out in *Ferguson,* the County's pleading was plainly defective, and its intransigence in refusing to amend clearly warranted the result. Our quarrel with the *Ferguson* opinion lies not with the result, but rather with what we believe to be dictum which is misleading.

state and federal governments as well." (*In re Marriage of Shore, supra,* 71 Cal.App.3d at pp. 299-300.)

█ "[T]he very essence of such public policy is to provide assurance that the county, which has discharged the obligation of the derelict parent, be reimbursed if the accrued support payments are collected from such parent." (*Id.,* at p. 300.)

### IV.

█ In response to the mandatory federal legislation, the California Legislature made a number of additions and amendments to the Welfare and Institutions Code. Among the additions were sections 11350, 11350.1, and 11475.1 (Stats. 1975, ch. 924, §§ 5, 5.5, 10).[5]

Section 11350 sets forth the obligation of noncustodial parents in cases where a county provides AFDC payments for the benefit of a child or children. In such cases, the noncustodial parents are obligated to the county either (a) in an amount specified for support in a court order, or (b) in the absence of such court order, for the amount of aid actually paid by the county, adjusted according to the reasonable ability of the parents to pay. The section also contains the following significant language: "[¶] The district attorney shall take appropriate action pursuant to this section in the superior court of the county which provided aid under this chapter." Nothing in that language suggests that a district attorney seeking child support must confine himself to the family law superior court.

---

[5]Since these statutes were enacted in 1975, they have been amended several times.

The full text of Welfare and Institutions Code section 11350, which reads today as it did when enacted and when this action was heard, is as follows: "[¶] In any case of separation or desertion of a parent or parents from a child or children which results in aid under this chapter being granted to such family, the noncustodial parent or parents shall be obligated to the county for an amount equal to: [¶] (a) The amount specified in an order for the support and maintenance of such family issued by a court of competent jurisdiction; or in the absence of such court order, [¶] (b) The amount of aid paid to the family during such period of separation or desertion limited by such parent's reasonable ability to pay during that period in which aid was granted; and [¶] (c) Such obligation shall be reduced by any amount actually paid by such parent during such period of separation or desertion for the support and maintenance of such family. [¶] The district attorney shall take appropriate action pursuant to this section in the superior court of the county which provided aid under this chapter. [¶] The court may order the defendant to pay the county attorney fees and court costs, based on such defendant's reasonable ability to pay, in any proceeding brought by the county pursuant to this section. [¶] In making the determination of the defendant's reasonable ability to pay attorney's fees and court costs under this section, the court shall be limited to the following considerations: [¶] (a) The wealth and income of the defendant; [¶] (b) The current ability of the defendant to earn; [¶] (c) The age of the defendant."

Section 11350.1 is even more persuasive. It reads in part as follows:[6] *"Notwithstanding the provisions of any other statute,* in any action brought by the district attorney for child support of a minor child or children, the action may be prosecuted in the name of the county on behalf of the child, children or caretaker parent. The mother shall not be a necessary party in such action but may be subpoenaed as a witness. In an action under this section *there shall be no joinder of actions, or coordination of actions,* or cross-complaints, and the issues shall be limited *strictly* to the question of paternity, if applicable, and child support. *Nor shall such support or paternity action be delayed or stayed because of the pendency of any other action between the parties."* (Italics added.) ˙ We believe this language plainly indicates a legislative intent that a district attorney is empowered to bring a *separate action* to collect child support, irrespective of whether any other action may be pending between the parents. Where government funds are being spent for the support of needy children, a district attorney should not be hampered by the existence of a family law superior court order that may be several years old.

---

[6]As originally enacted in 1975, section 11350.1 read as follows: "Notwithstanding the provisions of any other statute, in any action brought by the district attorney for the support of a minor child or children, the action may be prosecuted in the name of the county on behalf of such minor child or children. The mother shall not be a necessary party in such action but may be subpoenaed as a witness. In an action under this section there shall be no joinder of actions, or coordination of actions, or cross-complaints, and the issues shall be limited strictly to the question of paternity, if applicable, and child support. Nor shall such support or paternity action be delayed or stayed because of the pendency of any other action between the parties. Nothing herein contained shall be construed to prevent the parties from bringing an independent action under the Family Law Act or otherwise, and litigating the issue of support. In such event, the court in such proceedings shall make an independent determination on the issue of support which shall supersede the order made pursuant to this section."

As amended in the 1981-1982 Extra Session of the Legislature (Stats. 1981-1982, First Ex.Sess., ch. 3, § 24, p. 6900, urgency eff. Feb. 17, 1982), the statute then read as follows: "Notwithstanding the provisions of any other statute, in any action brought by the district attorney for child support of a minor child or children, the action may be prosecuted in the name of the county on behalf of the child, children or caretaker parent. The mother shall not be a necessary party in such action but may be subpoenaed as a witness. In an action under this section there shall be no joinder of actions, or coordination of actions, or cross-complaints, and the issues shall be limited strictly to the question of paternity, if applicable, and child support. Nor shall such support or paternity action be delayed or stayed because of the pendency of any other action between the parties. [¶] In any action to enforce a spousal support order the action may be pled in the name of the county in the same manner as an action to establish a child support obligation.. The same restrictions on joinder of actions, coordination of actions, and cross-complaints, and delay because of the pendency of any other action as relates to actions to establish a child support obligation shall also apply to actions to enforce a spousal support order. Nothing herein contained shall be construed to prevent the parties from bringing an independent action under the Family Law Act or otherwise, and litigating the issue of support. In such event, the court in such proceedings shall make an independent determination on the issue of support which shall supersede the order made pursuant to this section."

Since then, the statute has been amended again. But the sentences upon which we focus have remained intact.

■ Another portion of section 11350.1 reads as follows: "Nothing herein contained shall be construed to prevent the parties from bringing an independent action under the Family Law Act or otherwise, and litigating the issue of support. In such event, the court in such proceedings shall make an *independent determination* on the issue of support which shall *supersede* the order made pursuant to this section." (Italics added.) The Court of Appeal in *County of Los Angeles* v. *Ferguson, supra,* 94 Cal.App.3d at p. 559, interpreted the quoted language to mean that where there exists an order for child support issued by a family law court, that order renders any independent action by a district attorney "superfluous." We respectfully disagree with that interpretation. In our view, the quoted passage means simply this: ■ If a district attorney brings an independent action seeking child support under Welfare and Institutions Code section 11350.1, and succeeds in getting a court order for such support, that order is not graven in stone, except as it may address the payment of arrearages. In other words, a court order made under section 11350.1 for ongoing child support may be "superseded" (i.e., replaced or supplanted) by an order of a family law court, *and vice versa.* ■ If the quoted language had been omitted from section 11350.1, an order for child support made pursuant to that section could only be altered at the whim of the district attorney, and the responsible parent would have no recourse even in the event of an extreme change of circumstances. The Legislature patently did not intend such a result.

We turn next to Welfare and Institutions Code section 11475.1. When this action was heard in 1983, that section read in part as follows: "Each county shall maintain a single organizational unit located in the office of the district attorney which shall have responsibility for *promptly and effectively enforcing child* and spousal *support obligations* and determining paternity in the case of a child born out of wedlock. . . . *The district attorney shall take appropriate action, both civil and criminal, to enforce this obligation when the child and the spouse or former spouse is receiving public assistance. When the child is not receiving public assistance, the district attorney shall take appropriate action to enforce the child support obligation.*" (Italics added; Stats., 1981-1982, First Ex.Sess., ch. 3, § 32, p. 6904, urgency eff. Feb. 17, 1982.)[7] Unmistakably the section says "ap-

---

[7]At that time, the full text of section 11475.1 read as follows: "Each county shall maintain a single organizational unit located in the office of the district attorney which shall have responsibility for promptly and effectively enforcing child and spousal support obligations and determining paternity in the case of a child born out of wedlock. This responsibility shall apply to spousal support only where the spousal support obligation has been reduced to an order of a court of competent jurisdiction and the spouse (or former spouse) is receiving aid to families with dependent children for a child or children of the marriage or former marriage of the obligated spouse or former spouse. The district attorney shall take appropriate action, both civil and criminal, to enforce this obligation when the child and the spouse or former spouse is receiving public assistance. When the child is not receiving public assistance,

propriate action, both civil and criminal." At the same time, the applicable criminal statute, Penal Code section 270, read (and still reads) in part as follows: "[¶] The provisions of this section are applicable whether the parents of such child are or were ever married or divorced, *and regardless of any decree made in any divorce action relative to alimony or to the support of the child.*" (Italics added.) ■■■ The message of Penal Code section 270 is obvious: In deciding to pursue a criminal action against a delinquent parent for child support, a district attorney is not obliged to obtain a license from a family law court. ■■■ In our reading of the statutes, we can discern no reason why such an imprimatur should be required when a district attorney chooses to bring a civil, rather than a criminal, action.

## V.

We are not diverted, as the *Ferguson* court apparently was, by the language of Welfare and Institutions Code section 11484. That statute was enacted in 1965, and therefore *antedates* the federally-mandated AFDC recipients' assignment of support rights discussed above. Curiously, despite extensive revisions of other sections of the Welfare and Institutions Code in the intervening years, section 11484 has remained unaltered and intact. In that sense, it is perhaps a relic, but it is a useful relic. That statute[8] provides that if aid has been applied for or granted to a child whose parents are in the throes of marital discord, the district attorney "*may*" apply to a family law court for either (a) an order for child support, (b) modification of an existing order for child support, or (c) an order holding a recalcitrant parent in contempt. Unlike the statutes we previously have examined, section 11484 says "*may*" instead of "*shall*"; and because it was enacted some ten years earlier than those other statutes, we find it difficult to credit the notion that section 11484 was intended to provide an *exclusive* remedy for collecting child support in the face of an existing family law court order. ■■■ In

---

the district attorney shall take appropriate action to enforce the child support obligation. There shall be prominently displayed in every public area of every office of the units established by this section a notice, in clear and simple language prescribed by the Director of Social Services, that child support enforcement services are provided to all individuals whether or not they are recipients of public social services and that spousal support enforcement services are available to those receiving public social services." Once again, the statute has been amended since 1982. But, despite the amendment, the sentences to which we refer have remained basically intact.

[8]The full text of Welfare and Institutions Code section 11484 reads as follows: "[¶] If aid has been applied for or granted to a child of parents who are divorced or legally separated, or who are engaged in a divorce or separate maintenance action which is pending, the district attorney may apply to the superior court in such action for an order directing either parent or both to show cause: [¶] (1) Why an order of support for the child should not be entered, or [¶] (2) Why the amount of support previously ordered should not be increased, or [¶] (3) Why the parent should not be held in contempt for his failure to comply with any order of support previously entered."

our view, section 11484 merely provides to a district attorney (who is now *mandated* to collect child support when government funds are being expended) an additional avenue of approach. ■ We suspect section 11484 was written because, as a matter of form and tradition, a prosecuting attorney does not normally appear in marital dissolution actions. Section 11484 gives a district attorney an opportunity so to do, in the appropriate case.

Another statute worthy of note is Civil Code section 248, which has been in effect since 1955.[9] A part of the Uniform Civil Liability For Support Act, which deals with the support of children as well as others, that section provides in part: "Whenever the county furnishes support to an obligee [e.g., a child], it has the same right as the obligee to whom the support was furnished, *for the purpose of securing reimbursement and of obtaining continuing support.*" (Italics added.) The section makes no mention of a family law court. Civil Code section 245 (a part of the same act) simply says that "The superior court shall have jurisdiction of all actions brought under this title." And Civil Code section 251 says that "The rights herein created are *in addition to and not in substitution for* any other rights." (Italics supplied.) These statutes provide a district attorney yet another avenue of approach.

Then there is Civil Code section 4702, subdivision (c), which reads in part as follows: "Civil enforcement by the district attorney of the county of residence of the custodial parent, where the order is in the county of the noncustodial parent or any other county, may be brought in accordance with Section 1697 of the Code of Civil Procedure. If the court directs the district attorney of the county of residence of the noncustodial parent to enforce such order, the expenses of the district attorney with respect to such enforcement shall be a charge upon the county of residence of the noncustodial parent."

The very fact that these alternative avenues still exist suggests very strongly that the California Legislature, in complying with the federal mandate, did not mean to hobble the officers charged with seeking reimbursement for expended AFDC funds.

---

[9]The full text of Civil Code section 248 now reads as follows: "The obligee may enforce his right of support against the obligor and the county may proceed on behalf of the obligee to enforce his right of support against the obligor. Whenever the county furnishes support to an obligee, it has the same right as the obligee to whom the support was furnished, for the purpose of securing reimbursement and of obtaining continuing support. The right of the county to reimbursement shall be subject to any limitation otherwise imposed by the law of this state. The court may order the obligor to pay the county reasonable attorney fees and court costs in any proceeding brought by the county pursuant to this section."

The last sentence was added in 1971. (Stats. 1971, ch. 578, § 3.3.)

## VI.

The *Ferguson* opinion, in support of the view that a district attorney must move only in a family law court, said this: "The purpose of confining such inquiry to such proceedings is patent. Were they not so confined, conflicting determinations could be made by superior courts in different counties where the noncustodial parent and the child reside in separate counties and judicial effort would be wasted by duplicating the investigation necessary to become and remain familiar with the changing circumstances of the parties." (*County of Los Angeles* v. *Ferguson, supra,* 94 Cal.App.3d at p. 560.) Once again with great respect, we find this reasoning unpersuasive.

First, we doubt that any family law court can "remain familiar with the changing circumstances of the parties." The family law court which issues an original order for child support may never see the parties again. The custodial parent, for example, may move with the children to another county, and the family law court of that other county would then have jurisdiction to modify the original support order. (Civ. Code § 4702, subd. (c); *Kulko* v. *Superior Court* (1977) 19 Cal.3d 514, 520-525 [138 Cal.Rptr. 586, 564 P.2d 353].) Alteration of existing family law support orders necessarily is based upon a *change* of circumstances, with which the court is not "familiar," but must be informed of anew. The question therefore is not one of duplication of effort; instead, the question is one of which court shall put forth the effort.

Second, we note that pursuant to the provisions of section 394 of the Code of Civil Procedure, when a county brings a civil action against a resident of another county, the defendant has the right to move for a change of venue to a neutral county. ▮ The section has been held to be controlling in actions seeking reimbursement of expended AFDC funds and child support. (*Dorame* v. *Superior Court* (1978) 81 Cal.App.3d 70, 72-73 [146 Cal.Rptr. 162].) ▮ The result is complicated enough in the ordinary case; but if we follow the *Ferguson* approach, the result could approach the chaotic. For example:

Assume a dissolution of marriage in Los Angeles County. The judgment orders the father to pay child support. The father then moves to San Jose, while the mother and the children move (for instance) to Alpine County. The father, for whatever reason, suddenly stops paying child support. The mother then applies to Alpine County for AFDC benefits for her children. The District Attorney of Alpine County thereupon files a civil action against the father, in the Superior Court of Alpine County, pursuant to Welfare and Institutions Code section 11350.1. (Section 11350 of the same code allows him to "take appropriate action pursuant to this section in the superior court

of the county which provided aid under this chapter.") The father is then duly served with process in San Jose.

Pursuant to Code of Civil Procedure section 394, the father moves for a change of venue to a neutral county. Assuming the motion is granted, the probable result would be a removal of the action from Alpine County to some neighboring Northern California county (Mono, for example). The superior court of that county would do the investigative work to ascertain "the changing circumstances of the parties."

But according to *Ferguson,* the scenario could well run thus:

When the father stops paying child support, the District Attorney of Alpine County must fly to Los Angeles, secure from that county's superior court an order to show cause, and then serve the father in San Jose. The father then moves for a change of venue to a neutral third county.

Of course, it is perfectly possible that the father might elect Los Angeles County as a suitable venue, and thus save a bit of travel. But that is not the point. The point is that we are dealing with public funds provided to the unfortunate; and section 11350 of the Welfare and Institutions Code states ". . . shall take appropriate action . . . in the superior court of the county which provided aid under this chapter." We perceive no reason why the district attorney of a nurturing county should be obliged to apply to a family law court at a distant end of the state. The object is not to fly prosecutors around; the object is to bring the delinquent parent to the court of the county whose taxpayers have been helping to support his children. If that parent then moves for a change of venue, so be it; but since the ultimate end is to *recover* money, let there be only one move.

### VII.

The interpretation, of statutes—particularly a group of statutes, some enacted at the same time and others not—is invariably difficult. Here, the intent of Congress and of our Legislature appears to be this:

When a county furnishes AFDC funds to needy children, the county's taxpayers pay part of the bill. Federal legislation provides assistance in meeting that bill, but has insisted that the states (and hence the counties) "promptly and effectively" seek reimbursement from the responsible parent. The California Legislature has charged the district attorney of each county with the responsibility of collecting both reimbursement and ongoing child support. If the collection efforts are not effective, the state and the county lose their federal support. We ourselves may not have the message verbatim,

but we suspect that it goes something like this: "Mr. District Attorney, go get the money, and use every lawful means at your command."

Accordingly, we hold that in this case the County of Santa Clara had standing to bring an independent action, under section 11350.1 of the Welfare and Institutions Code, to seek reimbursement for expended AFDC funds from appellant.

## VIII.

We turn now to appellant's second contention, which is that the order of the family law court terminating his obligation to support his children was "res judicata" as to that obligation. The argument is specious.

A county which provides AFDC funds to needy children is an *indispensable party* to any action which seeks to end the responsible parent's child support obligation. (*In re Marriage of Lugo* (1985) 170 Cal.App.3d 427 [217 Cal.Rptr. 74]; *County of Alameda* v. *Clifford* (1960) 187 Cal.App.2d 714, 719-723 [10 Cal.Rptr. 144].) As an indispensable party, the County of Santa Clara in this case was entitled to legitimate notice of appellant's action, and to an opportunity to be heard. (*Id.*, at p. 720-721.) Our own search of the record reveals that the County was afforded neither. Consequently, it was not bound by the order of the family law court, filed December 5, 1979, terminating appellant's obligation of child support. (See *Kraus* v. *Willow Park Public Golf Course* (1977) 73 Cal.App.3d 354, 363-370 [140 Cal.Rptr. 744].)

## IX.

The judgment is affirmed.

Panelli, P. J., and Agliano, J., concurred.

*Review granted January 16, 1986. Review dismissed and opinion ordered published on May 14, 1987.