Opinion
 

 KANE, J.
 

 Support, Inc., the assignee of petitioner Mary Shore, appeals from the trial court’s order quashing a writ of execution and denying its motion to censure the district attorney and remove him from the action. The relevant facts leading to the dispute may be summarized as follows:
 

 On August 13, 1970, an interlocutory decree was granted dissolving the marriage between Mary Shore (Mary) and respondent, Donald E. Shore. Respondent was ordered to pay $150 per month child support
 
 [1]
 
 and $150 per month spousal support for three years. Shortly after the rendition of the decree, Mary applied for and received payments ranging from $20 to $237 per month under aid to families with dependent children (AFDC). In an effort to secure reimbursement of the welfare aid thus paid, the court repeatedly ordered that the support payments by respondent be made to the Santa Clara County Adult Probation Department (County).
 

 
 *294
 
 The record is uncontradicted that for the approximately five- and-a-half-year period extending from August 1970 through January 1976, Mary had received a total of $10,075.61 AFDC aid, of which $6,239.91 remained unreimbursed to the County. Nevertheless, after going off AFDC in January 1976, Mary assigned her right to the past child and spousal support to appellant, a private collection agency, in March 1976. On March 25, 1976, appellant petitioned for and was granted a writ of execution in the amount of $6,295 principal and $1,940.91 interest, whereunder levy was made on four pieces of respondent’s real estate and also on his wages.
 

 On April 5, 1976, respondent filed a motion to quash the writ of execution. On April 15, 1976 the District Attorney of Santa Clara County joined the action as amicus curiae and argued that since Maiy had received AFDC aid during the period in which the arrearages accrued, the accrued support payments were due and owing to the County and that the purported assignment of rights to appellant was therefore invalid. On April 23, 1976, appellant filed a motion to dismiss the amicus brief and to remove and censure the district attorney. On May 7, 1976, after hearing the arguments of the parties, the trial court granted respondent’s motion to quash the writ of execution and denied appellant’s motion to dismiss the amicus curiae brief and remove and censure counsel.
 

 Although the parties raise several issues on appeal, the cardinal question upon which the present controversy turns is whether Mary, an AFDC recipient, was authorized to assign to appellant her rights as to the past support payments which accrued while she was receiving AFDC or whether she was limited to assign for collection only rights as to the future payments which fell due after Januaiy 31, 1976, when she was no longer an AFDC recipient.
 

 While conceding that during the time in which AFDC is being paid to a recipient the county possesses the exclusive right to collect support payments from a noncustodial parent, appellant insists that the exclusive collection right of the county terminates when the custodial parent ceases to receive AFDC, and from that point on she is free to collect the amount due (past or future) in any way she wishes, including an assignment to a private collection agency. On the other hand, respondent and amicus maintain that by paying AFDC aid to the custodial parent, the county, under a well outlined statutory scheme, obtains an irrevocable vested right to the collection of all support payments that have accrued
 
 *295
 
 while the custodial parent was receiving AFDC; and further that the recipient is entitled to assign for collection future rights only, i.e., those rights which mature and become due after the payment of AFDC has terminated. For the reasons which follow, we uphold the position taken by respondent and amicus and affirm the order.
 

 To begin with, we point out that the enforcement of child support rights involves not only a matter of private or local concern, but poses an important question "for the federal and state governments as well. Consequently, in determining child support rights, including those relating to the assignment of such rights, we are governed not only by the rules of common law, but also by specific statutes enacted by the federal and state legislative bodies. Notably, in 1975 Congress adopted title IV-D of the Social Security Act (42 U.S.C. §§ 651-660) which requires that the states establish a comprehensive program for both child support enforcement and determination of paternity. More to the point, 42 United States Code section 602(a)(26)(A), provides that as a condition of eligibility for aid, the welfare applicant or recipient is required to assign to the state any rights to support which have accrued at the time such assignment is executed. In an effort to conform to the federal statute, in 1975 the California Legislature enacted section 11477 of the Welfare and Institutions Code,
 
 [2]
 
 providing in relevant part that
 
 “As a condition of eligibility for aid
 
 paid under this chapter,
 
 each applicant or recipient shall:
 
 [1] (a)
 
 Assign to the county any rights to support
 
 from any other person such applicant may have in their own behalf or in behalf of any other family member for whom the applicant is applying for or receiving aid, and
 
 which have accrued at the time such assignment is made. Receipt of public assistance
 
 under this chapter
 
 shall operate as an assignment by operation of law."
 
 (Italics added.)
 

 The cited section, which became effective on September 20, 1975 (Stats. 1975, ch. 924, § 15), makes it evident that by applying for and receiving aid the custodial parent assigns by operation of law all support rights that have accrued
 
 [3]
 
 before and during the grant of the aid. Since in the case at bench Mary had been an AFDC recipient for a number of years prior to the enactment of section 11477 and was receiving aid also on and after the effective date of the statute, she clearly
 
 *296
 
 falls within the aforestated provisions. As a consequence, she must be deemed to have assigned to the County all her support rights due from respondent that had accrued as of September 20, 1975 and up to
 
 January
 
 31, 1976, during which time she continued to receive the county aid. It is, of course, well recognized that once a valid assignment has been made, the assignor cannot cancel or modify the completed assignment by unilateral action without the assent of the assignee, nor may he defeat or impair the rights of the assignee in any other way
 
 (H. D. Roosen Co.
 
 v.
 
 Pacific Radio Pub. Co.
 
 (1932) 123 Cal.App. 525, 533
 
 [11
 
 P.2d 873];
 
 McGown
 
 v.
 
 Dalzell
 
 (1925) 72 Cal.App. 197, 201 [236 P. 941]; 7 Cal.Jur.3d, Assignments, § 43, p. 69). It follows that the purported assignment to appellant of support rights accrued prior to January 31, 1976, must be held null and void in the instant case; and as a result appellant must be deemed to have acquired no right whatsoever for the collection of those support payments which fell due on or before January 31, 1976.
 

 Despite the unavoidable conclusion flowing from the statute and the legal effect of assignment, appellant argues that the County here failed to succeed to Mary’s rights and, therefore, Mary was free to assign her support rights for collection to appellant or any other person.
 

 At the outset it is contended that the “ ‘rights to support’ ” which are assigned to the county by operation of law if the custodial parent receives welfare aid, do not embrace support rights reduced to judgment or court order. This contention is obviously mistaken. The federal statute, after which the California legislation is modeled, spells out that the support rights assigned to the state constitute an obligation owed to the state by the individual responsible for providing the support, and more importantly that the amount of such obligation is “the amount specified in a court order which covers the assigned support rights” (42 U.S.C. § 656(a)(1)(A)). In consonance with the federal enactment, section 11350 underlines that “In any case of separation or desertion of a parent or parents from a child or children which results in aid under this chapter being granted to such family,
 
 the noncustodial parent
 
 or parents
 
 shall be obligated to the county for
 
 an amount equal to: [¶] (a)
 
 The amount specified in an order for the support and maintenance
 
 of such family
 
 issued by a court
 
 of competent jurisdiction . . .” (italics added).
 

 Appellant’s next argument that the assignment to the County failed to materialize with regard to past payments accrued prior to September 20, 1975, the effective date of the statute, because section
 
 *297
 
 11477 operates prospectively only, must also be rejected for at least two reasons.
 

 One, section 11477 explicitly states that as a condition for eligibility the welfare recipient shall assign to the county any rights to support
 
 which have accrued at the time of the assignment.
 
 It is beyond dispute that Mary received AFDC aid on September 20, 1975, and also that at that time the past child and spousal support payments due from respondent had accrued within thé meaning of the statute.
 

 Two, but even aside from section 11477, under the law existing prior to September 20, 1975, the county paying welfare aid for the support of a needy child was entitled to reimbursement from the custodial parent, and in order to secure such right the county obtained an equitable assignment or subrogation right. Thus, prior to September 1975, section 11457 provided that the county must be reimbursed from the amount collected from the absent parent for the past support furnished from public assistance funds.
 
 [4]
 
 Moreover, Civil Code section 248, enacted in 1955 and amended in 1971, provides in part that “The obligee may enforce his right of support against the obligor and the county may proceed on behalf of the obligee to enforce his right of support against the obligor.
 
 Whenever the county furnishes support to an obligee, it has the same right as the obligee to whom the support was furnished, for the purpose of securing reimbursement
 
 and of obtaining continuing support. The right of the county to reimbursement shall be subject to any limitation otherwise imposed by the law of this state.” (Italics added.)
 

 As repeatedly underlined, equitable assignment or right of subrogation is a creature of equity and applies to all cases where one party involuntarily pays a debt for which another is primarily liable and which in equity and good conscience should have been paid by the latter
 
 (Estate of Kemmerrer
 
 (1952) 114 Cal.App.2d 810, 814 [251 P.2d 345, 35 A.L.R.2d 1393];
 
 Fireman’s etc. Co.
 
 v.
 
 State Comp. etc. Fund
 
 (1949) 93 Cal.App.2d 408, 412-413 [209 P.2d 55]; 7 Witkin, Summary of Cal. Law (8th ed. 1974) Equity, § 124 et seq., p. 5342).
 

 
 *298
 
 Appellant’s argument that both as a matter of statutory construction and public policy the right of County to collect past due payments should terminate when the custodial parent ceases to receive AFDC aid, and that the custodial parent should be given a free hand to collect the past payments from the other parent, cannot be accepted either.
 

 Appellant’s reliance on the statute is patently misplaced. To start with, section 11477 assigns to the county the collection right to the accrued payments without qualification and such assignment to the county is final and may not be revoked unilaterally by the assignor
 
 (H. D. Roosen Co.
 
 v.
 
 Pacific Radio Pub. Co., supra,
 
 123 Cal.App. at p. 533). Section 11476, upon which appellant primarily relies, simply provides that after the cessation of welfare assistance the district attorney shall continue to enforce support payments (i.e., for those falling due) from the noncustodial parent for a period not to exceed three months.
 
 [5]
 
 While the referred code section is entirely silent with regard to the county’s collection right of past due payments, the federal regulation clarifies that “
 
 When a family ceases receiving assistance
 
 under the State’s Title IV-A plan,
 
 the assignment of support rights
 
 under § 232.11 of this title
 
 terminates, except with respect to the amount of any unpaid support obligation that has accrued under such
 
 assignment.” (45 C.F.R. § 302.51(f); italics added.)
 

 Appellant’s contention that sound public policy requires that after the termination of the aid the custodial parent’s right to collect past arrears be restored, ignores the plausible fact that the primary reason underlying the public enforcement of support rights is to insure that the mojieys disbursed by the county for the aid of a needy child be returned to the public source from which they were disbursed. This public policy is reflected in the specific statutory provisions dealing with public enforcement of support rights and the reimbursement of the county for the expenses made. Thus, in compliance with the federal rules, the California statute designates the State Department of Benefit Payments as the single organizational unit whose statutory duty is to administer the state plan securing child support and determining paternity (§ 11475).
 
 *299
 
 Also, there are repeated provisions in the statute that the money due from the noncustodial parent for the support of a needy child receiving AFDC aid must be paid to the designated public officials who shall transmit the same to the county providing aid; that the district attorney shall take appropriate action to enforce the support rights falling under this chapter; and that the county shall be reimbursed for the payments made on behalf of the needy child (§§ 11350, 11457; Civ. Code, § 4702, subd. (a); 45 C.F.R. § 302.51(f).
 
 [6]
 
 In addition the premise that the past support payments owed to the welfare recipient parent should be collected through public rather than private channels is buttressed by the further consideration that the county is not the only public entity that has a privilege of reimbursement. On the contrary, pursuant to statute, both
 
 *300
 
 the state and federal governments are entitled to reimbursement from the funds collected by the county in proportion to their contribution to the welfare aid (§ 11487).
 
 [7]
 
 It follows that an eventual denial to the county of the right to collect the past arrearages from the noncustodial parent might result in a
 
 loss
 
 of revenue not only to the county, but to the state and federal governments as well.
 

 Appellant’s claim that the granting of an exclusive right to the county for the collection of all past arrearages without regard to the amount of welfare aid paid to the welfare recipient is unfair and might result in a serious impairment or loss of that right because as a matter of practice the district attorney or the county do not pursue the collection with adequate vigor, is partly misplaced, partly based on sheer speculation.
 

 As noted earlier, the exclusive right to collect past due payments from the noncustodial parent has been conferred upon the county by virtue of specific provisions of the statute and the grant of such exclusive right is supported also by sound public policy reasons. As we have pointed out, the very .essence of such public policy is to provide assurance that the county, which has discharged the obligation of the derelict parent, be reimbursed if the accrued support payments are collected from such parent. It is readily discernible that the
 
 pro tanto
 
 assignment advocated by .appellant would thwart this policy goal because once the county or the district attorney would lose control of the case, there would be no assurance whatever that the county would be able to enforce its preemptive lien on the support payments and thereby recoup the funds expended on behalf of the derelict parent.
 

 Appellant’s concern that the support rights of the custodial parent or the child will not be adequately enforced by the county or the district attorney proceeding on behalf of the county, must be dismissed as merely conjectural and speculative. Appellant’s argument notwithstanding, the statute contains guarantees and safeguards that the support payments owed to the custodial parent will be expeditiously and vigorously pursued on the part of the county. Thus, it is specifically provided that the district attorney “shall have responsibility for promptly and effectively enforcing the obligation of parents to support their
 
 *301
 
 children” and “shall take appropriate action, both civil and criminal, to enforce this obligation when the child is receiving public assistance” (§ 11475.1; see also § 11350; Civ. Code, § 4072, both
 
 supra).
 
 It is, of course, presumed that official duty has been regularly performed (Evid. Code, § 664). Furthermore, the discharge of the above stated statutory duty of the district attorney and the county may be compelled by the usual remedy of administrative mandamus. But in addition to the general remedy, the statute itself specifies the legal steps available if the public agency fails to "comply with the state plan securing child support (§ 11475.2).
 
 [8]
 

 Lastly, we categorically reject appellant’s alternative contention that the district attorney should have been removed from the case and that the failure of the trial court to so order constituted error. Our earlier discussion more than adequately illustrates that the enforcement of the support rights owed to the needy children or the parent receiving AFDC aid is, as a matter of statute, entrusted to the district attorney who proceeds on behalf of the county.
 

 In light of the foregoing conclusion, it is unnecessary to decide whether the ruling of the trial court should be sustained on the additional ground that the assignment of support payments for collection on a contingency fee basis is to be considered void as against public policy
 
 (Kyne
 
 v.
 
 Kvne
 
 (1943) 60 Cal.App.2d 326 [140 P.2d 886, 141 P.2d 221]).
 

 
 *302
 
 The order of June 22, 1976, quashing writ of execution and denying appellant’s motion to remove and censure the district attorney is affirmed.
 

 Taylor, P. J., and Rouse, J„ concurred.
 

 A petition for a rehearing was denied July 29, 1977, and the petition of appellant Support, Inc. for a hearing by the Supreme Court was denied September 15, 1977.
 

 [1]
 

 The child support decree was modified by the court' on two occasions: by an order filed February 11, 1972, the court reduced the monthly payments to $ 100; and on January 15, 1976, the payments were increased to $175 per month.
 

 [2]
 

 Unless otherwise indicated, all references will be made to the California Welfare and Institutions Code.
 

 [3]
 

 The word “accrue” is defined as “1: to come into existence as a legally enforceable claim 2: to come by way of increase or addition 3: to be periodically accumulated whether as an increase or a decrease” (Webster’s New Collegiate Dict. (7th ed. 1971) p. 6).
 

 [4]
 

 Prior to September 1975, section 11457 read in part as follows: “Money from absent parents for support of a needy child, when collected by or paid through any public officer or agency, shall be transmitted to the county department providing aid to be used for the support of the child. All absent parents’ payments or collections available to the county department for support of the child shall be applied first to support for the calendar month following receipt by the county department, and any balance remaining shall either be applied against future needs or be treated as reimbursement for past support furnished from public assistance funds.”
 

 [5]
 

 Section 11476 provides in part that “Whenever a family which has been receiving aid to families with dependent children ceases to receive assistance, the district attorney shall:
 

 “(1) Continue to enforce support payments from the noncustodial parent for a period not to exceed three months from the month following the month in which such family ceased to receive assistance and pay all amounts so collected to the family; and
 

 “(2) At the end of such three-month period, if after written notice to the individual, the district attorney is requested to do so by the individual on whose behalf the enforcement efforts will be made, continue to enforce such support payments from the noncustodial parent.”
 

 [6]
 

 Section 11350, enacted in 1975, provides in part that “The district attorney shall take appropriate action pursuant to this section in the superior court of the county which provided aid under this chapter.” (See to the same effect §§ 11350.1, 11475.1,
 

 Civil Code, section 4702, subdivision (a), reads “Notwithstanding the provisions of Section 4701, in any proceeding where a court makes or has made an order requiring payment of child support to a parent receiving welfare moneys for the maintenance of minor children,
 
 the court shall direct that payments of support be made to the county clerk, probation officer, or other officer of the court or county officer
 
 designated by the court for such purpose,
 
 and shall direct the district attorney to appear on behalf of such welfare recipient
 
 in any proceeding
 
 to enforce such order.”
 
 (Italics added.)
 

 Section 11457 sets out that “Money from noncustodial parents for the support of a needy child with respect to whom an assignment under Section 11477 has been made shall be paid directly to the district attorney or his designee and shall not be paid directly to the family. Such absent parent
 
 support payments,
 
 when collected by or paid through any public officer or agency,
 
 shall be transmitted to the county department providing aid
 
 under this chapter. [H] The Department of Benefit Payments, by regulation, shall establish procedures not in conflict with federal law, for the distribution of such noncustodial parent support payments. [S] If an amount collected as child support represents payment on the required support obligation for future months, the amount shall be applied to such future months. However,
 
 no such amounts shall be applied to future months unless amounts have been collected which fully satisfy the support obligation
 
 assigned under subdivision (a) of Section 11477
 
 for the current months and all past months.”
 
 (Italics added; see also Civ. Code, § 248,
 
 supra).
 

 45 Code of Federal Regulations section 302.51(0 states that “When a family ceases receiving assistance under the State’s title IV-A plan, the assignment of support rights under § 232.11 of this title terminates, except with respect to the amount of any unpaid support obligation that has accrued under such assignment. From this accrued amount, the IV-D agency shall attempt to collect such unpaid obligation. Under this requirement:
 

 “(1) Such collections shall be used to reimburse any amounts of past assistance which have not been reimbursed under paragraph (b) (4) of this section;
 

 “(2) Of the amount collected, the IV-D agency shall determine the Federal Government’s share of the collection so the IV-A agency may reimburse the Federal Government to the extent of its participation in the financing of the assistance payments. From the Federal Government’s share the IV-D agency shall deduct and pay the incentive payment, if any, prescribed in § 302.52;
 

 “(3)
 
 Only amounts
 
 collected pursuant to this paragraph
 
 which exceed the amount of unreimbursed past assistance shall be paid to the family.
 

 “(4) For those cases in which collections are authorized under paragraph (e) of this section, priority shall be given to collection of current support.” (Italics added.)
 

 [7]
 

 Section 11487 provides that “Except as provided in Section 11457. whenever any aid under this chapter is repaid to a county or recovered by a county, the state shall be entitled to a share of the amount received or recovered, proportionate to the amount of the state funds paid, and, if funds advanced by the federal government were paid, the federal government shall be entitled to a share of the amount received
 
 or recovered.
 
 proportionate to the amount of federal funds paid.”
 

 [8]
 

 Section 11475.2 sets out that “If at any time the Director of the Department of Benefit Payments considers any public agency, which is required by law. by delegation of the department, or by cooperative agreement, to perform functions relating to the state plan for securing child support and determining paternity, to be failing in a substantial manner to comply with any provision of the state plan, the director shall put such agency on written notice to that effect. [11] If the director determines that there is a failure on the part of such public agency to comply with the provisions of the state plan, or if the State Personnel Board certifies to the director that such public agency is not in conformity with applicable merit system standards under Part 2.5 (commencing with Section 19800) of Division 5 of Title 2 of the Government Code, and that sanctions are necessary to secure compliance, the director may invoke either or both of the following sanctions: [1>] (a) Withhold part or all of state and federal funds, including incentive funds, from such public agency until the public agency shall make a showing to the director of full compliance: or [11] (b) Notify the Attorney General that there has been a failure to comply with the state plan and the Attorney General shall take appropriate action to secure compliance. [<1] Nothing in this section shall be construed as relieving the board of supervisors of the responsibility to provide funds necessary for the continued operation of the state plan as required by law.”