**Joseph P. WYMER, Jr.,**
**Defendant-Appellant,**

v.

**Rhonda P. WYMER, Plaintiff-Appellee.**

**BAP No. 80–0001–KGH.**
**Bankruptcy No. 79–23464WH.**
**Adv. No. 79–0008.**

United States Bankruptcy Appellate Panels of the Ninth Circuit.

Argued April 17, 1980.
Decided Sept. 10, 1980.

Raymond P. Van Stockum, Jones & Pittullo, Upland, Cal., for defendant-appellant.

Stephan M. Shirley, Shirley, Johnson & Shirley, Pomona, Cal., for plaintiff-appellee.

Before KATZ, GEORGE, and HUGHES, Bankruptcy Judges.

KATZ, Bankruptcy Judge:

The instant appeal, while couched in terms of whether or not MRS. WYMER, plaintiff/appellee, has a non-dischargeable claim for accrued but unpaid child support against MR. WYMER, defendant/appellant, raises the issue of whether appellee even has an assertable claim against appellant.

The appellant alleges that any monies he owed to appellee prior to October 31, 1979, were in fact assigned by operation of law to the County of Los Angeles and to the State of California, as a result of appellee receiving Aid to Families with Dependent Children (AFDC). Hence, appellant argues that the appellee has no claim against him and further, that the claim having been so assigned is dischargeable in his bankruptcy

proceeding pursuant to § 523(a)(5)(A) of the Bankruptcy Code.[1]

As a subsidiary issue, the appellant alleges that even if we find no assignment to the county and to the state, by virtue of the fact that the appellee assigned 50% of her recovery to her attorney as part of a contingent fee contract, at least that portion is dischargeable under § 523(a)(5)(A).

Since, for reasons hereinafter stated, we have determined that the appellee has no claim against the appellant for any sums due for child support prior to October 31, 1979, the judgment will be reversed on those grounds and we need not discuss the issue of dischargeability under § 523(a)(5)(A).

## FACTS

On January 22, 1974, in an action entitled WYMER vs. WYMER, Superior Court of California, County of Los Angeles, Action # EAD34766, an Interlocutory Judgment of Dissolution of Marriage was entered which, among other things, ordered JOSEPH P. WYMER, JR., the appellant, to pay child support in the amount of $25.00 per week. Pursuant to California Civil Code § 4702(a)[2] the child support payments were ordered to be made through the office of the Court Trustee.

From the date of the Interlocutory Judgment of Dissolution until October 31, 1979, the date on which AFDC to MRS. WYMER ended, the appellant made no child support payments pursuant to that judgment. In order to provide support for herself and the minor child of the parties, MRS. WYMER applied for and was granted aid under the AFDC Program.[3]

On September 26, 1979, appellee sought and obtained the issuance of a writ of execution for child support which had accrued to that date in the amount of $6,800.00 plus $1,342.05 in interest and $4.00 in costs.

Armed therewith she caused the Marshal of San Bernardino County to levy on a number of vehicles belonging to appellant.

When the efforts of the appellant to quash execution and vacate levy and to claim those vehicles as exempt failed, he filed the instant Petition for Relief under Chapter 7 of the Bankruptcy Code, 11 U.S.C. § 701 et seq., on November 13, 1979, thereby invoking the provisions of § 362(a)(1) & (2).[4]

1. § 523(a)(5)(A): "A discharge under sections 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt— (5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of both spouse or child, in connection with a separation agreement, divorce decree, or property settlement agreement, but not to the extent that—(A) such debt is assigned to another entity, voluntarily, by operation of law, or otherwise."

2. § 4702(a): "In any proceeding where a court makes or has made an order requiring payment of child support to a parent receiving welfare moneys for the maintenance of minor children, the court shall direct that payments of support be made to the county clerk, probation officer, or other officer of the court or county officer designated by the court for such purpose, and shall direct the district attorney to appear on behalf of such welfare recipient in any proceeding to enforce such order."

3. One of the matters of factual ambiguity in this case is the date upon which AFDC commenced. Based on the order of payment to the court trustee pursuant to Cal.Civ.Code § 4702(a) it may be assumed she was receiving aid as of January 22, 1974. But the date of commencement of aid is not important since § 11477(a) of the California Welfare and Institutions Code requires an assignment thereunder to be for "any rights to support . . . which have accrued at the time such assignment is made." Hence only a termination date is needed.

4. § 362(a)(1) & (2): "Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title operates as a stay applicable to all entities, of—(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before this commencement of the case under this title; (2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title."

The appellee then commenced an action to have her claim for the accrued but unpaid child support determined to be non-dischargeable. After trial, William H. Hyer, Bankruptcy Judge, determined the claim of MRS. WYMER to be non-dischargeable and entered judgment in her favor for $8,146.05 plus interest and costs. Judge Hyer also vacated the stay imposed by § 362(a) of the Bankruptcy Code thereby permitting the appellee to proceed with her state court action.

The instant appeal followed.

### DISCUSSION

The crucial issue seems to be whether MRS. WYMER had as of September 26, 1979, a claim against MR. WYMER.

Put another way, if the claim for child support had been assigned to the County of Los Angeles and to the State of California, it seems that these are the entities to assert the claim, unless those entities have somehow given up their rights thereto and restored such to MRS. WYMER.

If the county or state assert their rights on the claim, which they have not, it is clear from reading § 523(a)(5)(A), that the claim is dischargeable. For, although the statutory history of that section is scant, it teaches us that § 523(a)(5)(A) was enacted in its present form to overcome judicial decisions such as *Williams v. Department of Social and Health Services, State of Washington,* 529 F.2d 1264 at 1265 (9th Cir. 1976), which held that a claim for child support assigned to a state agency was non-dischargeable under § 17(a)(7)[5] of the Bankruptcy Act, 11 U.S.C. § 35(a)(7).

Therefore, § 523(a)(5) specifically provides that child support assigned, by operation of law or otherwise, to an entity, [which, according to § 101(14)[6] of the Bankruptcy Code, 11 U.S.C. § 101(14), includes a governmental unit], is to be discharged. The plain wording of § 523(a)(5) is such as to deny discharge of child support or alimony only if the duty to pay is *directly to the person to whom the money is owed.* Therefore where a state or county has been assigned such support rights in return for financial relief, such as AFDC, it is apparent that Congress intended that the debtor's burden of making those support payments to the assignee governmental agency be dischargeable in recognition of the fact that such an agency can better absorb the loss than can the debtor. This is in concert with the philosophy of giving the debtor a "fresh start unencumbered by the debts of the past." *Local Loan Co. v. Hunt* 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230 (1934).

Since neither the county nor the state are asserting a claim against MR. WYMER, we come to the question of MRS. WYMER'S ability to assert the claim she is here pursuing.

In examining the California law on the subject, it appears that in conformity with the 1975 changes made in 42 U.S.C. § 602(a)(26),[7] receipt of AFDC after September 20, 1975, required an assignment by operation of law to the County of Los Angeles and to the State of California, of MRS. WYMER'S rights to receive child sup-

---

**5.** § 17(a)(7): "A discharge in bankruptcy shall release a bankrupt from all of his provable debts, whether allowable in full or in part, except such as ... (7) are for alimony due or to become due, or for maintenance or support of wife or child, or for seduction of an unmarried female, or for breach of promise of marriage accompanied by seduction, or for criminal conversation."

**6.** § 101(14): " 'entity' includes person, estate, trust, governmental unit; ... 'Entity' is defined, for convenience, in paragraph (14) to include person, estate, trust, and governmental unit. It is the most inclusive of the various defined terms relating to bodies or units." His-

torical and revision notes, 11 U.S.C.A. § 101(14), at 36 (West 1979).

**7.** 42 USC § 602(a)(26): "A state plan for aid and services to needy families with children must ... provide that, as a condition of eligibility for aid, each applicant or recipient will be required—to assign the state any rights to support from any other person such applicant may have (i) in his own behalf or in behalf of any other family member for whom the applicant is applying for or receiving aid, and (ii) which have accrued at the time such assignment is executed."

port from MR. WYMER. California Welfare and Institutions Code, § 11477(a);[8] 42 U.S.C. § 602(a)(26)(A); 45 CFR §§ 232.11[9] and ... 302.51(f).[10] In addition, for any amount accruing under her support rights prior to September 20, 1975, the county and state would have held an equitable assignment of, or subrogation right to, those sums. *County of Santa Clara v. Support, Inc.,* 89 Cal.App.3d 687, 152 Cal.Rptr. 754 (1979); *In re Marriage of Shore,* 71 Cal. App.3d 290, 139 Cal.Rptr. 349 (1977).

The court below, in conformity with the law as outlined above, found that such an assignment did in fact exist. (See Finding of Fact No. 9). It then went on to find that after termination of AFDC on October 31, 1979, "moneys received by plaintiff representing delinquent child support are not assigned to another entity, either voluntarily or by operation of law, or otherwise."

Based on that finding, together with the further findings

"5. That the policy of the Department of Public Social Services of Los Angeles County is that after termination of an AFDC grant that no claim for reimbursement of moneys paid under said grant is made against the AFDC recipient."

"6. That the Department of Public Social Services of Los Angeles County has not in the past and does not contemplate in the future making any claim against Plaintiff, RHONDA B. WYMER, from any of the proceeds from execution sale of ve-

hicles in the custody of the Marshal's Office in San Bernardino County of California, in said proceeding.

and

"7. That the proceeds of the execution sale will be paid to Plaintiff, RHONDA B. WYMER."

Judge Hyer concluded that the claim for child support belongs to MRS. WYMER and is non-dischargeable.

We agree with the finding that there was an assignment to the County of Los Angeles of MRS. WYMER'S claim for child support.

We conclude however, that the assignment is still valid and in force, that therefor MRS. WYMER has no claim against MR. WYMER, the claim is yet owned by the County of Los Angeles and by the State of California.

The evidence upon which Judge Hyer reached his factual findings is the testimony of one Charles H. Van Natter, Deputy District Director for the Department of Public Social Services, Los Angeles County, California. It is the testimony of Mr. Van Natter which convinced Judge Hyer that as of October 31, 1979, the date receipt of AFDC by MRS. WYMER terminated, there existed no assignment to the county by MRS. WYMER for present or past accrued, but unpaid, child support. Mr. Van Natter's testimony apparently led Judge Hyer to find and conclude that either the County of Los Angeles had waived its rights under the assignment or that it had reassigned any rights it had to MRS. WYMER. No

8. § 11477(a): "As a condition of eligibility for aid paid under this chapter, each applicant or recipient shall: (a) assign to the county any rights to support from any other person such applicant may have in their own behalf or in behalf of any other family member for whom the applicant is applying for or receiving aid, and which have accrued at the time such assignment is made. Receipt of public assistance under this chapter shall operate as an assignment by operation of law. *An assignment of support rights to the county shall also constitute an assignment to the state.*"

9. 45 CFR § 232.11: "Assignment of rights to support. (a) The State must provide that: (1) As a condition of eligibility for assistance, each

applicant for or recipient of AFDC shall assign to the State any rights to support from any other person as such applicant or recipient may have."

10. 45 CFR § 302.51(f): "Distribution of child support collections. The State plan shall provide as follows: (f) When a family ceases receiving assistance under the State's title IV–A plan, the assignment of support rights under § 232.11 of this title terminates, except with respect to the amount of any unpaid support obligation that has accrued under such assignment. From this accrued amount, the IV–D agency shall attempt to collect such unpaid obligation ..."

specific finding was made as to the status of the assignment on September 26, 1979, the date of issuance of the writ of execution to MRS. WYMER.

An examination of Mr. Van Natter's testimony must be made to ascertain whether that testimony is sufficient to sustain the lower court.

The burning question is whether Mr. Van Natter's testimony, taken as a whole, can be construed to constitute either a waiver by the county and the state of their rights under the assignment or an outright reassignment in favor of MRS. WYMER. If it can properly be so construed, appellee should prevail. We find however, that such a construction is not proper for the reasons hereinafter stated.

Mr. Van Natter's testimony, couched in the form of a hypothetical question, was as follows:

Q "(BY MR. SHIRLEY:) Mr. Van Natter if you could assume the factual situation where an individual was receiving AFDC for a period of years, during which period of time a child support order of the Superior Court was in effect and that virtually none of the court-ordered child support had been paid. And that after the person terminated the AFDC program, the same individual applied to the Superior Court for the execution and would thereafter, after the termination of aid, receive monies representing the delinquent child support.

Would the county or state government have a claim to those monies?

A  No.

Q  And can you tell us the reason behind that? Perhaps distinguish between AFDC and county relief programs.

A  Well, Aid to Families with Dependent Children is a program that comes under the Social Security Act of 1935, and part of the basic—one of the basic premises in the Social Securities Act is that assistance to families with dependent children, once rendered, is not repayable. . .

Q  All right. And so what you're saying is the money representing the back child support would be paid directly to the mother under those circumstances without claim by either the county or the state government?

A  Yes, Sir.

Q  All right. Now, at the end of the aid, what is the effect of that assignment?

A  Well, it becomes in effect nullified. We send a notice to the district attorney relating to the aid payment and we notify the district attorney that the family is no longer receiving assistance and they close their case.

Q  All right. So what you're saying is at the termination of aid, the assignment is also terminated?

A  Uh-huh.

*    *    *    *    *    *

Q  (BY MR. SHIRLEY:) Has any action been taken on the part of the Department of Public Social Services to recover monies representing delinquent child support that may be received by RHONDA B. WYMER?

A  No, the case is closed.

Q  Is there any action contemplated to recover those monies?

A  MR. VAN STOCKUM: Objection, your Honor. This witness has qualified himself as an expert in the field of providing aid in the Aid to Dependent Children act. Their agency does not provide the enforcement, and under this act that's the district attorney's area. And he would not be qualified to testify as to whether or not the district attorney is going to act.

MR. SHIRLEY: Your Honor?

THE COURT: Maybe he can answer from the standpoint that he can notify anyone to that.

MR. SHIRLEY: You mean intend to notify?

THE WITNESS: We have notified them that the aid is discontinued and that the case is closed.

Q  (BY MR. SHIRLEY:) All right. Have you taken any action to seek recovery from RHONDA B. WYMER of the funds representing delinquent child support?

A No.

\*     \*     \*     \*     \*     \*

Q (BY MR. SHIRLEY:) All right. So that as of the present time, that assignment is no longer operative?

A No. Because the assignment is for aid received during the while they were receiving public assistance.

\*     \*     \*     \*     \*     \*

Based on the quoted testimony the court concluded that the assignment by operation of law, which is mandated by California Welfare and Institutions Code § 11477(a) and the Social Security Act under which AFDC is granted federal funds, for all accrued child support as of the date of commencement of AFDC and all child support accruing during receipt of such aid, terminated retroactively and *ab initio* on the date appellee stopped drawing aid. That is, once MRS. WYMER stopped receiving AFDC the county waived all rights in the moneys she had previously assigned to the county by operation of law.

The statutory scheme of AFDC is intended both to assure that non-custodial parents will be held to their ongoing support obligations for their children and that agencies providing aid to such children, where the non-custodial parent fails to do so, will be reimbursed for their expenditures. California Welfare and Institutions Code § 11477; 45 CFR 232.11(b). That statutory scheme clearly spells out that the district attorney's office has the sole enforcement responsibility of collecting support payments due an AFDC recipient from a non-custodial parent. *County of Santa Clara v. Support, Inc.*, 89 Cal.App.3d 687, 700–701, 152 Cal. Rptr. 754; Welfare and Institutions Code § 11475.1.[11]

Plaintiff/appellee urges upon us that Mr. Van Natter's testimony is susceptible to the interpretation put thereon by the court be-

low and that those findings are entitled to be affirmed unless clearly erroneous because of their purely factual nature. FRCP 52(a); *U. S. v. U. S. Gypsum Co.*, 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746 (1948).

We do not agree with this analysis. Moore's Treatise on Federal Practice teaches us that an appellate court is only bound by the "clearly erroneous" rule as to questions of fact, but not as to questions of law. *5A Moore's Federal Practice § 52.05(1)*, 2d Ed. (1979).

Mixed questions of fact and law, that is, legal inferences to be drawn from the facts, have been held to be outside of the limitation of Rule 52(a) of the Federal Rules of Civil Procedure, which states the "clearly erroneous" rule standard. *9 Wright and Miller, Federal Practice and Procedure*, § 2589, pp 753 (1973).

It is often difficult to differentiate what is "fact" from what is "law." It is even more difficult to determine mixed questions of fact and law. The differentiation however, must be made to apply the correct standard of appellate review.

As was said in *Mayo v. Pioneer Bank & Trust Company*, 297 F.2d 392, 395 (5th Cir. 1961):

"... . but when the factual determination is primarily a matter of drawing inferences from undisputed facts or determining their legal implications, appellate review is far broader than where disputed evidence and questions of credibility are involved."

Thus, findings of fact based on erroneous view of the law are not binding, nor are findings on mixed questions of law and fact which involve an error of law. *In re Lurie*, 385 F.Supp. 784 (E.D.N.Y.1974).

We think that, at best, the issues here are mixed questions of fact and law. They involve at the least an application of the

---

**11.** W. & I.C.: § 11475.1: "Each county shall maintain a single organization unit located in the office of the district attorney which shall have responsibility for promptly and effectively enforcing the obligation of parents to support their children and determining paternity in the case of a child born out of wedlock. The dis-

trict attorney shall take appropriate action, both civil and criminal, to enforce this obligation when the child is receiving public assistance and when requested to do so by the individual on whose behalf the enforcement efforts will be made when the child is not receiving public assistance."

clear import of the various bodies of the law governing AFDC to the testimony adduced. Thus we conclude that our range of review is much broader than the "clearly erroneous" rule would permit.

Mr. Van Natter's testimony cannot be taken in a vacuum. It must be construed in light of the statutory scheme under which AFDC is governed. The import of Mr. Van Natter's testimony was to the effect that his office would be taking no action against MRS. WYMER as a result of the assignment. However his department is not the department charged with enforcing assignments under AFDC. That is clearly the province of the district attorney. There is no showing on the part of Mr. Van Natter that he had, or has, authority to reassign or waive either the county's or the state's rights. Neither is there a showing that he was authorized to speak for, or was an agent of, the district attorney. In fact, Mr. Van Natter's department was not the assignee of these rights, nor was it the department to which the Superior Court ordered the child support payments made.

Despite his expertise in distributing AFDC funds and his department's case management procedures, Mr. Van Natter was not in a position to set forth, nor did he articulate, the collection practices of the district attorney's office in the case of MRS. WYMER, or for that matter in AFDC cases generally. Nor did he state by implication or otherwise that MRS. WYMER'S case would be given preferential treatment or be handled somehow differently from · other AFDC cases. Therefore, if we conclude, as did the court below, that Mr. Van Natter waived, by his testimony or the conduct of his office, the county's or the state's rights, it might indicate a waiver or reassignment in all AFDC cases.

Mr. Van Natter is not a lawyer, hence his words are to be given their ordinary meanings.

His testimony that the assignment was "nullified" must be read together with his testimony that his department operated under the laws and regulations of the California Welfare and Institutions Code. When that is done, it seems to us that the clear import of his testimony was that at the termination of AFDC the assignment of Welfare and Institutions § 11477 terminates or is nullified as to *future* support due from the non-custodial parent. That interpretation is in full harmony with the statutory scheme. As the court stated in *County of Santa Clara v. Support, Inc.*, 89 Cal. App.3d 687, at p. 700, 152 Cal.Rptr. 754, referring to *In re Marriage of Shore,* 71 Cal.App.3d 290, 139 Cal.Rptr. 349:

"We held such arrearages were assigned in full to the county and that the assignment remained in effect after the family went off aid, until the county is reimbursed."

Even though such cases as *In re Marriage of Shore* and *County of Santa Clara v. Support, Inc.*, are cases in which the county was a party and actively sought to collect the past due child support, their holdings are appropriate here where the case seems to be between the husband/appellant and the wife/appellee only.

In both *Shore* and *Santa Clara County* the custodial parent and AFDC recipient had assigned her rights to collect support to a collection agency. Yet it was that parent who was attempting ultimately to collect the child support arrearages which had been previously assigned to the county and to the state. This case is no different. Here, MRS. WYMER is trying to collect child support arrearages directly, in derogation of the rights of the assignee county and state.

As the court stated in *County of Santa Clara*, at p. 697, 152 Cal.Rptr. 754

"The right of a county to collect past due payments from a custodial parent does not terminate when a custodial parent ceases to receive aid under the AFDC program."

■ An assignment by operation of law has the ultimate effect of passing title to a cause of action (here MRS. WYMER'S right to collect child support from MR. WYMER) from one person to another. *Fifield Manor v. Finston,* 54 Cal.2d 632, 639–640, 7 Cal. Rptr. 377, 354 P.2d 1073 (1960).

■ Once a person has assigned a right, he cannot thereafter apply it for his own benefit without incurring liability to the assignee. *Nineteenth Realty Co. v. Diggs,* 134 Cal. 278, 25 P.2d 522 (1933). Nor may an assignor maintain action on a claim after making an absolute assignment of it to another; his right to demand performance is extinguished, the assignee acquires such right, for to assign ordinarily means to transfer title or ownership to property. *McCown v. Spencer,* 8 Cal.3d 216, 225, 87 Cal.Rptr. 213 (1970).

■ As indicated earlier, the issue thus becomes whether the County of Los Angeles and the State of California, to which the claims for support against MR. WYMER were assigned by operation of law, are, as of the time of trial, still the owners thereof.

For if they are, the MRS. WYMER, according to the authorities, owns nothing which she can enforce against MR. WYMER, either within or without this bankruptcy proceeding.

To answer that question, it must be determined whether Mr. Van Natter's testimony may reasonably be interpreted as a release, waiver or reassignment.

It has been held in one New York case, *Wood v. Rocker,* 100 Misc.2d 890 (1979), interpreting an assignment by operation of law for child support that such assignment is taken in the assignee's official capacity and cannot by him be assigned to the former recipient of public assistance. We agree.

If the right of the county and the state, as assignees to collect, does not cease, in the absence of a showing of satisfaction, waiver, or reassignment, the county and the state remain the obligees and owners of the claim. MRS. WYMER is not the owner of the claim and has no right to proceed to collect it.

The county (at its own option) may collect spousal support, the collection of which is not mandated by state law, as well as child support. "Should the county elect not to collect spousal support, *a release can be given as soon as reimbursement from child support is obtained."* (Emphasis added). *County of Santa Clara v. Support, Inc.,* 89 Cal.App.3d 687, 701, 152 Cal.Rptr. 754 (1979).

In other words, it seems that the county could waive its right to collect assigned spousal support, but not assigned child support.

If MRS. WYMER, as custodial parent desires to collect the accrued but assigned child support directly for her own benefit, she must first show that the county's and the state's claim are satisfied. This can be accomplished by either obtaining an affidavit from the district attorney's office that there are no moneys owing to the county and state or obtaining a release from the county's family support division in full and complete satisfaction of unreimbursed expenses on account of past assistance. *County of Santa Clara v. Support, Inc.,* 89 Cal. App.3d 697, 152 Cal.Rptr. 754. Neither was done here at the time of the issuance of the writ of execution, the trial of this matter or at the time this appeal was argued.

The appellant established beyond doubt that an assignment existed up to October 31, 1979. The appellee failed to establish that this assignment has been satisfied or that it has been released by the county.

■ An assignment once made, cannot be canceled or modified without the assent of the assignee. *In re Marriage of Shore,* 71 Cal.App.3d 290, 139 Cal.Rptr. 349. No such assent is present here, by implication or otherwise.

As we indicated earlier, the issue of whether the assignment has been nullified, terminated or canceled for all purposes is a mixed question of fact and law. Hence the trier of fact must apply the statutory scheme to the evidence presented. Such application would, in our opinion, lead to the conclusion that MRS. WYMER has not carried the burden of showing that the assignment is no longer valid as it applies to accrued but unpaid child support as of October 31, 1979, and certainly not as of September 26, 1979, the date upon which she obtained the writ of execution.

Counsel for plaintiff/appellee has, in his brief filed herein and at oral argument raised the issue of res judicata as that issue relates to a determination allegedly made by the Superior Court of the County of Los Angeles on the question of the assignment of MRS. WYMER'S support rights to the County of Los Angeles, State of California.

The issue is first raised by appellee in the complaint filed before the Bankruptcy Court on December 4, 1979, seeking a determination of nondischargeability of the child support herein in question.

In paragraphs 8 and 9 of that complaint, appellee alleges that by virtue of appellant having voluntarily submitted himself to the jurisdiction of the Superior Court for a determination of his Claim of Exemption and Motion to Quash Writ of Execution, both of which were denied by the Superior Court, that the doctrine of res judicata now prevents him from relitigating the question of the assignment to the County of Los Angeles.

However, plaintiff/appellee subsequently filed an Amendment to Complaint which superseded the original complaint on file. It was this amended complaint which was answered and which formed the basis of the trial in this matter.

We therefor conclude that the res judicata issue was never properly raised or brought before Judge Hyer.

Hence Judge Hyer could not, and in fact did not make any Findings of Fact and Conclusions of Law on this issue.

Our appellate review is similarly restricted to the record before us. But for the allegations in a superseded complaint which were not tried on their merits and a brief argument on the issue in appellee's brief, the record is devoid of any mention of res judicata. We therefor follow the lead of the trial judge in refusing to address the issue.

Under the Federal Rules of Appellate Procedures, Rule 10(a), the record on appeal consists of "[t]he original papers and exhibits filed in the district court, the transcript of proceedings, if any, and a certified copy of the docket entries prepared by the clerk. . . ."

■ The law seems to indicate that an appellate court may only adjudicate issues contained in the trial court record and that it may not, sua sponte, raise matters outside the record. *T. V. T. Corporation v. Basiliko,* 257 F.2d 185 (D.C.Cir.1958); *Eistrat v. Massachusetts Bonding and Insurance Co.,* 224 F.2d 784, (9th Cir. 1955).

The judgment is reversed with directions to enter judgment for defendant/appellant in conformity with this opinion.

HUGHES, Bankruptcy Judge, dissenting:

I dissent.

My principal quarrel with the majority opinion concerns what I perceive to be its futility. In purporting to determine that Mrs. Wymer has no claim against Mr. Wymer it (1) ignores the reality of the state court judgment in her favor and (2) fails to reach the dischargeability question raised by this appeal. In failing to decide the dischargeability question, it has decided nothing.

As I see it, we can meet the needs of the parties only if we assume for purposes of reaching the dischargeability issue that Mrs. Wymer has a claim. Whether Mrs. Wymer in fact has a claim that is enforceable by the state court judgment must be left to the state court.

I

The order appealed was in three parts. The first part decreed "the debt . . . in the amount of $8,146.05 . . . to be nondischargeable." The second part ordered that Mrs. Wymer have judgment for $8,146.05 against Mr. Wymer. The third part ordered "the automatic stay granted by 11 U.S.C. 362 dissolved as to the debt owed Rhonda B. Wymer resulting from action number EAD 34766 in the Superior Court of Los Angeles County, California."

Appellant stated in his notice of appeal that he appealed "from the judgment . . . finding the debt owed to plaintiff to be nondischargeable."

Appellant prayed in his opening brief on appeal for this panel to reverse and to "find that the proof of the assignment of the obligation owed to Rhonda B. Wymer was sufficient to make the claim dischargeable under Section 523(a)(5)(A)..."

Granting judgment for a debt that was already the subject of a state court judgment was unnecessary and unwarranted. *In re Leek*, 427 F.Supp. 1 (E.D.Mo.1975). Although the part of the order was not specifically appealed, it should be vacated.

Nevertheless, it is apparent that the true import of the trial court order was its (1) determination that the child support debt evidenced by the state court judgment was nondischargeable and its (2) dissolution of the automatic stay of enforcement of the state court judgment, particularly the latter.

The thrust of the appeal is to overcome the trial court holding of nondischargeability and to replace it with a dischargeability determination, relying on a reading of 11 U.S.C. § 523(a)(5)(A). I therefore see the question presented by this appeal as follows:

Does an otherwise nondischargeable judgment for child support become dischargeable as to the child or the custodial parent if, through assignment, the state has acquired rights in the judgment?

The majority avoids answering this question by finding there is no debt owing by Mr. Wymer to Mrs. Wymer.

It holds that "Since ... we have determined that the appellee has no claim against the appellant for any sums due for child support prior to October 31, 1979, the judgment will be reversed on those grounds and we need not discuss the issue of dischargeability under § 523(a)(5)(A)."

I agree there is no need to determine the dischargeability of a debt that does not exist. I disagree that the question presented by the parties can, or should be, avoided. In my view, even if the majority decision is correct as a matter of law it is without legal effect because it cannot be imposed on the California superior court. Further, as I read the record, the state court has already decided the question contrary to the majority.

## II

The state court has already ruled on the question addressed by the majority, holding that in spite of the assignment Mrs. Wymer could enforce the judgment. This occurred when, shortly before bankruptcy, appellant moved the state court to quash its writ of execution. Presented with the same argument the majority finds persuasive, the state court denied the motion.

The majority declines to consider the effect of that ruling, however, on grounds that the "res judicata issue was never properly raised" in the trial court. (Conceding that the issue was raised in appellee's original complaint, the majority observes that appellee "subsequently filed an Amendment to Complaint which superseded the original complaint on file. It was this amended complaint which was answered and which formed the basis of the trial in this matter." In fact, the original complaint to determine dischargeability was the basis of the trial. If the original complaint to determine dischargeability were superseded, the appeal would be confined to whether the levy of the writ of execution constituted a preference under 11 U.S.C. § 547. That is the only issue addressed in the Amendment to Complaint).

In itself, the majority's reluctance to consider the effect of the state court's ruling is harmless. What is far from harmless is its reluctance to consider the effect of the underlying state court judgment.

## III

The state court child support judgment was entered in 1974 and, so far as the record on appeal shows, remains unmodified today except to the extent it is affected by appellant's bankruptcy. Neither the appellant or the majority suggest that the judgment is deficient for lack or excess of jurisdiction, or on due process grounds. Indeed, the majority suggests no grounds whatever

for purporting to define the extent of Mrs. Wymer's rights under the California judgment.

The bankruptcy court, as other federal courts, is bound to give full faith and credit to state court judgments. 28 U.S.C. § 1738. *Scott Publishing Co. v. Rodgers*, 229 F.2d 956 (9th Cir. 1956). It is not free to modify or ignore such judgments except as authorized by statute. There is only one such statutory basis for the bankruptcy court to affect a state court judgment that I am aware of.

That authorization flows from the order of discharge, 11 U.S.C. § 727, and the power to enforce the order of discharge, 11 U.S.C. § 524. The bankruptcy court may declare a state court judgment void, if it is discharged. 11 U.S.C. § 524(a)(1). It may enjoin enforcement of a state court judgment, if it is discharged. 11 U.S.C. § 524(a)(2). There is no authority for a bankruptcy court to void or enjoin a state court judgment on other grounds, such as those relied on by the majority.

If the bankruptcy court is to have any power to affect enforcement of the state court judgment by appellee it must first find the debt discharged. In order to determine whether or not it is discharged, it must at least be assumed that appellee has a claim against appellant.

### IV

I do not know what will occur in this case on remand. The majority directs the trial judge to enter judgment for appellant "in conformity with this opinion." I take it this could be a judgment holding that noth-

ing is due, but it might take other forms. It could not, however, conform to the majority opinion and also give appellant the relief he sought in his appeal, namely a determination that "the obligation owed to Rhonda B. Wymer" is discharged.

Once appellant's discharge has been granted, appellee will no longer be constrained by the automatic stay from enforcing her state court judgment. 11 U.S.C. § 362(c)(1)(C). Inasmuch as the discharge voids and enjoins enforcement only of discharged judgments, appellant will need a judicial determination that the judgment is discharged if he is to invoke 11 U.S.C. § 524(a)(1) and (2).

It .is therefore possible, perhaps likely, that the parties will obtain an answer to their federal dischargeability question from the state court the next time Mr. Wymer moves the Superior Court of Los Angeles County to quash Mrs. Wymer's writ of execution.

I would think that the interests of the parties and of judicial administration are better served by accepting the fact of the state court judgment in Mrs. Wymer's favor, leaving to the state court the question decided by the majority and disposing of the dischargeability question in the bankruptcy court.