188 N.J. Super. 265 (1982)
457 A.2d 71
JEANNE DOLBERRY, PLAINTIFF,
v.
WILLIAM DOLBERRY, DEFENDANT.
Superior Court of New Jersey, Chancery Division Bergen County.
Decided December 10, 1982.
*267 Richard P. Williams, for plaintiff (Bergen County Welfare Board).
Kenneth M. Bushell for defendant, (Horowitz, Bross, Sinins, Imperial & Medvin, attorneys).
KRAFTE, J.J.D.R.C. (temporarily assigned).
This matter was brought before this court on a post-judgment application to compel payment on alimony and child support arrears arising under a prior order of support. The issue presented by this motion is as follows: Is the Bergen County Welfare Board's right to the alimony portion of arrears ($1,335) extinguished pursuant to N.J.S.A. 2A:34-25 by virtue of the remarriage of the former wife without said arrears having been reduced to judgment? No New Jersey case has addressed this issue heretofore.
*268 The relevant facts are not in dispute.
On May 25, 1976 the then Mrs. Dolberry made application for and was granted welfare assistance for herself and two infant children. That same day, as a condition of such assistance, she was required to and did sign an assignment of any and all rights to support to the welfare board, pursuant to N.J.A.C. 10:81-1 et seq.; Appendix D, § 220, "Assignment of Support Rights," Form PA 10-G.[1] Thereafter the welfare board, on her behalf, brought an action for support against defendant, and an order was entered on July 16, 1976. That order, the subject of this motion, required defendant to pay $70 a week support, allocated $40 as child support and $30 as alimony, through the Bergen County Probation Department for the benefit of the welfare board.
The welfare board terminated assistance to Mrs. Dolberry on March 30, 1979 but not before some $3,115 in arrears had accumulated. These arrears were allocated on the basis of the original order as $1,780 in child support and $1,335 in alimony. They were not reduced to judgment and remained uncollected when the within enforcement application was made.
In the interim the parties divorced and Mrs. Dolberry remarried on or about December 27, 1980. It is the defendant's position that plaintiff's remarriage nullified and vacated that portion of arrears allocated to alimony because it was not reduced to judgment prior to the time of her remarriage. He presses this argument despite the fact that it is agreed that these monies are owing to the welfare board and not the former Mrs. Dolberry.
Defendant argues that this court is without authority to enter an order respecting payment of these arrears and cites N.J.S.A. 2A:34-25 as authority for his proposition. He contends that the *269 welfare board, as assignee of plaintiff, held her right to "alimony" and, as such assignee, lost all rights to such alimony on the day she remarried, because she had lost them. He further asserts that to reason otherwise would give the welfare board, the assignee, greater rights than the former Mrs. Dolberry, the assignor, would have at the present time.
N.J.S.A. 2A:34-25 reads:
If after the judgment of divorce the wife shall remarry, the court shall not make any order as to the alimony of such wife except that upon application of the former husband, on notice and on proof of the marriage of the former wife after the judgment of divorce, the court shall modify any order or judgment as to the alimony of the former wife by vacating and annulling any and all provision in any such order or judgment, or both, directing the payment of money for the support of the former wife.
This statute was construed to contain the "mandatory requirement that the court vacate all support for the wife upon application of the former husband if the former wife shall remarry." Lepis v. Lepis, 83 N.J. 139, 151, n. 4 (1980); Sharpe v. Sharpe, 109 N.J. Super. 410, 417 (Ch.Div. 1970). The courts retain no discretion to allow the wife alimony payments following a subsequent marriage. Flaxman v. Flaxman, 57 N.J. 458 (1971); Richards v. Richards, 139 N.J. Super. 207 (Ch.Div. 1976); Ferreira v. Lyons, 53 N.J. Super. 84 (Ch.Div. 1958).
In Stein v. Fellerman, 144 N.J. Super. 444 (App.Div. 1976), an ex-wife who had remarried sought payment of alimony arrears which had accrued prior to her remarriage under a property settlement agreement. The court held that it was
... [t]he public policy of this State, expressed in N.J.S.A. 2A:34-25, that a divorced husband should not be forced to support a former wife after she has remarried another.... [at 454]
The nature of the liability asserted in Stein was the statutory right to alimony. The public policy which demands termination of that right was explained in Flaxman:
... When she enters into a second marriage ceremony, she holds herself out as having remarried and her first husband is entitled to rely upon her new marital status. He may assume that his financial obligations to her have ceased and reorder his own affairs accordingly. This freedom from such obligations may lead him to change his mode of living or even to remarry and establish a new family. [57 N.J. at 463]
*270 Flaxman dealt with the effect of an annulment of the ex-wife's voidable second marriage on the first husband's obligation for alimony. Nonetheless, the case elucidates the reasons for termination of alimony upon remarriage.
Of course, in all cases where alimony arrears owed to the ex-wife were reduced to judgment prior to the ex-wife's remarriage, N.J.S.A. 2A:34-25 is no defense. "After the remarriage of a former wife, N.J.S.A. 2A:34-25 would prevent that spouse from recovering arrearages that accrued prior to her remarriage which had not been reduced to judgment previously." Winters v. Winters, 162 N.J. Super. 456, 464 (App.Div. 1978). This is so because they are then "judgments for money owed, not judgments ordering the payment of alimony." Id. at 463.
Turning to the instant case, defendant misstates (mistates) the true nature of the liability asserted by the welfare board. It is quite different. To fully understand it, one must look to the context within which it arises.
To begin with, the issue presented here impacts not only on the litigants but affects important governmental concerns. The program of Aid to Families With Dependent Children (AFDC) came into existence with the Social Security Act of 1935. 42 U.S.C.A. §§ 301-1397f. In 1975 amendments were made to Title IV-A of the Social Security Act. Title IV-D (42 U.S.C.A. §§ 651-659) was likewise added, which established a mandatory program to be carried out by the states to enforce support obligations.
The federal program allows for substantial contribution to those states which choose to participate. Participation, however, is premised upon full compliance with federal law and regulations. Essex Cty. Welfare Bd. v. Institutions & Agencies Dep't, 75 N.J. 232, 235 (1938), cert. den. 437 U.S. 910, 98 S.Ct. 3103, 57 L.Ed.2d 1141 (1978).
New Jersey has chosen to participate. N.J.S.A. 44:10-1 et seq. The program is administered through the county welfare boards under the supervision of the Department of Human *271 Services, which has promulgated rules and regulations to effect the federal mandate. See N.J.A.C. 10-81-1 et seq.; Redding v. Burlington Cty. Welfare Bd., 65 N.J. 439, 442 (1974).
While the bulk of the compliance provisions are found in Administrative Code, the enabling statute unequivocably expresses the legislative intent:
The Commissioner of Human Services is authorized . .. to issue ... all necessary rules and regulations and administrative orders ... to secure for the state of New Jersey the maximum Federal financial participation that is available ... [N.J.S.A. 44:10-3]
Consistent with that design, and pursuant to 42 U.S.C.A. § 602(a)(26)(A), welfare recipients are "required to assign the state any rights to support from any other person such applicant may have (i) in his own behalf or in behalf of any other family member for whom the applicant is applying for or receiving aid, and (ii) which have accrued at the time such assignment is executed." "Assignment of Support Rights," Form PA-10G.[2] By operation of 42 U.S.C.A. 656(a), "Support rights assigned to the state under § 602(a)(26) of this Title shall constitute an obligation owed to such state by the individual responsible for providing such support." Thus, the assignment of support rights constitutes an obligation owed to the welfare board by defendant in the amount specified in the order of support. Essex Cty. Welfare Div. v. Simon, 178 N.J. Super. 523, 529 (App.Div. 1981). It is intended to supplement state recovery statutes and provides welfare boards broad leeway to institute suit for the recovery of assistance funds, the right to which they have validly and in good faith been assigned. Kernbach v. Kernbach, 174 N.J. Super. 544, 547 (Ch.Div. 1980). The assignment system permits the welfare boards to act on behalf of its recipients to collect court-ordered support and is a proper procedure for recoupment of such grants. Essex Cty. Welfare Div. v. Simon, supra 178 N.J. Super. at 529.
*272 Furthermore, "[w]hen a family ceases receiving assistance under the State's Title IV-A plan, the assignment of support rights under § 232.11 of this Title terminates, except with respect to the amount of any unpaid support obligation that has accrued under such assignment." 45 C.F.R. 302.51(f).
Recently, the Iowa Supreme Court ruled on whether the remarriage of the recipient spouse to the absent spouse entitled the absent spouse to a cancellation of all child support arrears which had accrued under the assignment of support rights. The court held that it did not, noting that "a valid assignment of a support judgment gives the assignee rights that cannot be affected by the former holder of the judgment without the assignee's consent." Greene v. Iowa Dist. Court for Polk Cty., 312 N.W.2d 915, 918 (Iowa 1981). In its opinion the court cited its prior decision in Broyles v. Iowa Dep't of Social Services, 305 N.W.2d 718 (Iowa 1981). In that case the ex-wife executed a "Release of Child Support Judgment" which purported to release her ex-husband from delinquent child support payments that had fallen due during a period when she was receiving welfare and a valid assignment existed. The ex-husband argued that the assignment was only valid for the period it was in effect. The court disagreed, holding that the assignment was effective until the delinquency incurred during the period of welfare assistance was fully paid. Id. at 722.
While Iowa law provides that accrued installments of child support become a judgment when due, Greene v. Iowa Dist. Court for Polk Cty., supra at 918, the California Court of Appeals refused to reach a contrary result on the basis that support arrears were reduced to judgment.
The case of In re Marriage of Shore, 71 Cal. App.3d 290, 139 Cal. Rptr. 349 (D.Ct.App. 1977), involved arrears which had accrued under a dissolution decree dated August 13, 1980, that provided for alimony and child support. Soon thereafter the ex-wife and children were granted assistance under A.F.D.C. This assistance continued for 5 1/2 years to January 1, 1976. At *273 that point the ex-wife assigned her right to past due alimony and child support to a private collection agency. It, in turn, secured a writ of execution to levy on the husband's assets. He moved for a stay of that proceeding. The District Attorney for Santa Clara County joined as amicus curiae, arguing that whatever was due was properly owed to the county and that the assignment to the collection agency was invalid. Id. 71 Cal. App.3d at 295, 139 Cal. Rptr. at 352.
The collection agency first argued that the assignment to the county (which became effective by operation of law, as is now the case in New Jersey) did not embrace support rights that have been reduced to judgment. The court held this contention to be erroneous:
The Federal statute, after which the California legislation is modeled, spells out that the support rights assigned to the state constitute an obligation owed to the state by the individual responsible for providing the support, and more importantly that the amount of such obligation is "the amount specified in a court order which covers the assigned support rights." [Id. 71 Cal. App.3d at 297, 139 Cal. Rptr. at 353]
The collection agency next argued that the county's rights under the assignment became effective on the date of the assignment statute, September 20, 1975, and that arrears prior to that date could not be collected by them. Rejecting the argument out of hand, the court found that the county had an equitable assignment or subrogation right which applies to all cases where one party involuntarily pays a debt for which another is primarily liable and which in equity and good conscience should have been paid by the latter. Id. 71 Cal. App.3d at 297, 139 Cal. Rptr. at 354. Thus, once there exists a valid assignment, the assignor cannot cancel or modify it by unilateral action without the consent of the assignee, nor may he defeat or impair the rights of the assignee in any other way. Id. 71 Cal. App.3d at 297, 139 Cal. Rptr. at 353.
Notwithstanding the foregoing, the welfare board has the right to collect from defendant the amount of welfare paid, up to the amount ordered independent of the assignment. As *274 stated in Kernbach, it is intended to "supplement state recovery statutes," not replace them. 174 N.J. Super. at 547.
This interpretation was similarly reached by the Washington Court of Appeals. This method (assignment), adopted by Washington in 1971, was approved in 1974 by the Federal Government as an additional remedy for enforcement of child support and was adopted as an amendment to apply to all states receiving A.F.D.C., 42 U.S.C.A. § 602(a)(26)(A). See Moore v. Moore, 20 Wash. App. 909, 583 P.2d 1249, 1252, n. 6 (1978).
Based on the above, this court finds that the arrears accrued under the order of July 16, 1976 were an obligation owing to the Bergen County Welfare Board by defendant William Dolberry, and were not alimony owing to the former Mrs. Dolberry, either then or now, regardless of whether or not reduced to judgment and regardless of Mrs. Dolberry's remarriage.
NOTES
[1] The law requires that such applicants for Aid to Families with Dependent Children shall be required to sign Form PA 10-G, "Assignment of Support Rights."
[2] Effective December 22, 1980, a recipient's rights to support are now automatically assigned by operation of law upon application for or receipt of aid. N.J.S.A. 44:10-2, as amended by L. 1980, c. 172, § 1.